**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DYVEX INDUSTRIES, INC.,** | : | |
| **Plaintiff,** | : | **Civil No. 12-CV-0979** |
| **v.** | : | **(JUDGE MANNION)** |
| **AGILEX FLAVORS &** **FRAGRANCES, INC., et al.,** | : | |
| | : | |
| **Defendants** | | |

## <u>MEMORANDUM</u>

Pending before the court is a discovery dispute between plaintiff Dyvex Industries, Inc. ("Dyvex") and defendants Agilex Flavors & Fragrances, Inc., Aromatic Technologies, Inc. and Aroma Tech (collectively referred to as "Agilex"). (Doc. Nos. 61, 62, 63). A discovery dispute conference was held before the court on September 22, 2015. Following the conference, the court directed the parties to submit briefs regarding the two discovery issues discussed, i.e., whether the software Dyvex used to read files on the kneader machine computer hard drive was proprietary to Dyvex or available to the public, including Agilex, and whether Agilex defendants can conduct additional discovery pertaining to the affidavits of non-experts relied upon by Dyvex's expert witnesses to support their rebuttal reports. (Doc. No. 65). Dyvex filed its brief opposing additional discovery with exhibits on October 5, 2015, (Doc. No. 68), and Agilex defendants filed their brief with exhibits on October 19, 2015**,** (Doc. No. 73). Dyvex filed its reply brief with additional exhibits on October 26, 2015. (Doc. No. 74).

In its September 22, 2015 Order, the court also directed that all expert witness depositions and all pending discovery were stayed until the two stated discovery issues were resolved. Further, the court ordered that the dispositive motions deadline was continued and that it would be re-scheduled after the discovery disputes were resolved.[1]

The court now resolves the discovery disputes.

I.    **BACKGROUND**[2]

This case arises out of an industrial fire that was allegedly caused by defective polymer fragrance oil used by Dyvex as an ingredient to manufacture "fragrance concentrate products." (Doc. No. 1, at 4). On June 3, 2010, Dyvex was using the oil in the manufacturing process when it caught fire and "caused extensive damage" to the plant and surrounding property, rendering its building unusable and causing its business operations to halt. (Doc. No. 1, at 4). On May 24, 2012, Dyvex sued Agilex defendants, all companies "engaged in the business of formulating, producing, selling and

---

[1]Despite the fact that in its September 22, 2015 Order, (Doc. No. 65), the court continued the dispositive motions deadline until the discovery disputes were resolved, third-party defendant Frank Manchio filed his motion for summary judgment. (Doc. No. 69). However, he is not involved in these disputes and his motion was permitted.

[2]The court limits the background to Dyvex's complaint and the original parties.

distributing" the scented oil that allegedly caused the fire. (Doc. No. 1, at 2-3). Dyvex alleged, in part, that Agilex defendants were negligent and that their product was defective. (Doc. No. 1, at 4-10). The original complaint of Dyvex against Agilex stated claims for negligence, strict liability, breach of contract, and breach of warrant, and included a request for punitive damages.[3] (Doc. No. 1, 4-10). Agilex filed their answer with affirmative defenses to Dyvex's complaint as well as a third-party complaint against BUSS, Inc. and Manchio on August 7, 2012.[4] (Doc. No. 5). Agilex's third-party complaint alleged, in part, that "[a]ny and all losses and damages allegedly sustained by plaintiff were the sole and direct result of the negligence, carelessness, and recklessness of Frank Manchio", an employee of Dyvex, regarding his operation, maintenance, or repair of the BUSS kneader machine. (Doc. No. 5, at 23, ¶ 10).

On December 15, 2014, the court issued the latest scheduling order

_____

[3]"The Pennsylvania Supreme Court just recently clarified in Tincher v. Omega Flex, Inc. that, under Pennsylvania law, Section 402A [of Restatement Second] governs only strict liability claims, and that common law negligence claims are subject to a different standard and analysis. Schwartz v. Abex Corp., —F.Supp.3d—, 2015 WL 3387824, *5 (E.D.Pa. May 27, 2015) (citing Tincher v. Omega Flex, Inc., 104 A.3d at 336, 345, 358, 381-83, 384 (Pa. 2014)).

[4]Third-party defendant BUSS was dismissed from this action with prejudice via stipulation and court order on March 30, 2015. (Doc. No. 59, Doc. No. 60). On December 4, 2015, the court granted Manchio's summary judgment motion and dismissed him. (Doc. No. 79).

directing that: all fact discovery was to be completed by January 15, 2015; expert reports were due from plaintiff by January 30, 2015 and from defendants by March 13, 2015; and supplementations were due by June 12, 2015. The order also stated that all expert witness discovery was to be completed by September 18, 2015, and dispositive motions were due by October 30, 2015.  (Doc. No. 57).

## II.  <u>DISCUSSION</u>

1. Whether the TrendReader software plaintiff used to read the Citect/SCADA files on the computer hard drive was proprietary to Dyvex and unavailable to Agilex.

Agilex requested additional fact discovery by issuing document subpoenas to third parties, deposition subpoenas to third parties and re-depositions of party representatives. One of the topics Agilex is seeking more information pertains to the hard drive in one of the computer control cabinets connected to the BUSS kneader machine being used by Dyvex at the time of the fire. As Dyvex points out, the exhibits show that Agilex was well aware of the computer cabinets and, that Agilex had ample opportunity during the time allotted for fact discovery, which was extended for 23 months, to pursue the issue of whether the control cabinets contained hard drives which stored information regarding the operation of the kneader machine. Agilex could have also sought information about the hard drive from BUSS,

the manufacturer and seller of the kneader machine which Agilex joined as a third-party defendant. However, Agilex did not request such information from BUSS prior to its dismissal from this case. Eventually, Agilex requested the court to compel Dyvex to make the hard drive available to them and the court did so. Agilex retrieved the hard drive for analysis on November 5, 2014. There was still over two month remaining for fact discovery and Agilex defendants could have submitted discovery requests to Dyvex regarding their examination of the hard drive. However, they did not send any such discovery requests to Dyvex. Agilex's experts found some of the files and data on the hard drive, and they retrieved some but not all of the existing hard drive files and data. Agilex provided Dyvex with a spreadsheet listing the files. (See Doc. No. 68, at 4-6). The files discovered on the hard drive had a common file designation, namely, "CitectSCADA." The files Agilex retrieved from the hard drive which they provided to Dyvex did not include the CitectSCADA files. Agilex's March 28, 2015 expert disclosures of their four liability experts indicated that their experts all concluded that Dyvex was not processing Perfectly Pomegranate ("PP"), manufactured by Agilex, in the kneader machine at the time of the fire. Agilex's experts opined that Dyvex was processing another fragrance oil at the time of the fire. These opinions contradicted the testimony of four Dyvex witnesses, including Joseph Depoti, Senior Vice President of Dyvex, who stated in his affidavit that at the time of the fire, Dyvex was processing PP. (Doc. No. 68-9). In addition to Depoti,

Robert Strony, President of Dyvex, and former Dyvex kneader operator Manchio as well as former Vice President David Pettinato all testified that Dyvex was processing PP at the time of the fire.

Dyvex explains that it expected the kneader machine process data saved on the hard drive to support the testimony of its witnesses that PP was being processed when the fire occurred, but states that "Agilex's consultant had not provided it and Agilex's experts therefore had not considered it." Dyvex states that on April 3, 2015, after it received Agilex's expert disclosure, it hired its own computer consultant, Michael Ryder a Technician/Engineer with Computer Visionaries, Inc. ("CVI"), who discovered that the CitectSCADA files on the kneader computer hard drive could be read with "TrendReader." Ryder also discovered that TrendReader was available from Schneider Electric, the company that holds the rights to the reader software. Ryder then contacted Schneider Electric and it agreed to provide the access to its reader at no charge enabling Ryder to retrieve the process data from the hard drive. Ryder avers that "[u]sing TrendReader, we were able to retrieve a log dated June 3, 2010" and he provided it to Dyvex. (Doc. No. 68-5). Dyvex states that "TrendReader revealed the process data known to but not accessed by Agilex" and represents that it provided Agilex with the newly recovered process data as part of its supplemental expert disclosures. Dyvex also states that the data retrieved from the hard drive proved it was processing PP at the time of the fire. Dyvex states that it also provided the new information to its

experts to use in their reports rebutting Agilex's experts and their conclusions that Dyvex was not processing PP when the fire occurred. (Doc. No. 68, at 4-6).

The court agrees with Dyvex that Agilex defendants could have and should have found out the correct reader software for the CitectSCADA files as Ryder did, and then acquire the right to use it from Schneider Electric. In fact, as Dyvex states and as its Exhibit E to its Doc. No. 68 brief shows, "[a] simple Google or Bing search identifies the company that holds the rights to the [reader] software, Schneider Electric." (Doc. No. 68, at 6-7, Doc. No. 68-6). Thus, Agilex will not be allowed to depose Ryder and to subpoena documents from CVI seeking all of the data and information recovered by CVI. Agilex's subpoenas to Ryder and CVI are **QUASHED**. Nor will Agilex be permitted to conduct any further fact discovery regarding the kneader computer hard drive and the CitectSCADA files since they failed to use due diligence to discover for themselves how to obtain the reader software for the files which was available to the public. Simply put, the reader software Dyvex used to read the Citect/SCADA files on the kneader's computer hard drive was proprietary to Schneider Electric and readily available to Agilex with minimal investigation, free of charge. As such, Agilex's experts should have been able to open the CitectSCADA files on their own and retrieve all of the data if Agilex had acted diligently and contacted Schneider Electric to obtain the software to read the files. As Dyvex states, Agilex still has possession of

the hard drive and they can access the available software from Schneider Electric to retrieve more data on their own. Additionally, Agilex can still depose Dyvex's experts regarding their analysis of the data obtained from the hard drive.

2. Whether Agilex defendants can conduct additional discovery pertaining to the affidavits of non-experts relied upon by Dyvex's expert witnesses to support their rebuttal reports.

As stated, Agilex's experts opined, in part, that Dyvex was not processing PP at the time of the fire contrary to Dyvex's allegation that it was. Dyvex states that it subsequently proved it was processing PP by using data from the kneader machine hard drive. Dyvex points out that the CitrectSCADA files in the kneader machine hard drive, which were read by using Schneider Electric's software, contained identifying numbers unique to PP at times that coincide with the fire. (Doc. No. 68-9, ¶'s 4,5). Further, Dyvex states that the data in these files showed how much of the oil was processed and how much product was produced, and that these figures were consistent with the post-fire weight of the drum containing PP. As such, Dyvex states that the amount of oil drawn from the drum was consistent with its production records. (Id., ¶'s 8-15). Dyvex contends that all of this information was available to Agilex but they failed to conduct further inquiries into these matters. Notwithstanding all of this information which Dyvex states Agilex failed to pursue, Agilex produced expert reports opining that Dyvex was not processing

PP when the fire started. Thus, Dyvex states that it had to submit the proper facts via affidavits from non-experts, including Depoti's and Strony's affidavits dated June and July 2015, so that its experts could rebut the erroneous conclusions of Agilex's experts. (Doc. No. 68-9, Doc. No. 68-10).

Agilex defendants now seek to conduct additional discovery regarding the affidavits from the fact witnesses upon which Dyvex's experts relied when they prepared their rebuttal reports concluding, in part, that Dyvex was processing PP at the time of the fire contradicting the reports of Agilex's experts. In their affidavits, Depoti and Strony also explain why they could not obtain financing to re-build their company. Thus, Agilex seeks to re-depose Depoti and Strony. Additionally, Agilex seeks an order directing Dyvex to produce all documents from Community Bank & Trust, Plick & Associates, and Investigative Engineering, Inc., as well as ordering the depositions of Rebecca Jones, William Farber, William Boyle, and Michael Zazula. (Doc. No. 73-1). Dyvex's rebuttal expert reports also relied upon affidavits from these other fact witnesses, such as Zazula regarding photographs, Jones regarding fire extinguishers, and lenders Farber and Boyle regarding financing for a new building.[5]

Dyvex states that all of these facts witnesses were already known to

---

[5]As discussed above, Agilex is not permitted to conduct any discovery directed to Ryder and CVI since Agilex failed to exercise due diligence in discovering the company which owned the reader to retrieve the data on the hard drive files from the kneader machine computer.

Agilex or should have been known to Agilex. Dyvex contends that it had to obtain the affidavits containing missing and corrected facts for the rebuttal reports of its experts since Agilex's experts rendered opinions without support from the true facts of this case. Dyvex states that "[t]he extent of [its] factual rebuttal was dictated by the extent to which Agilex's experts issued opinions based on assumed or incorrect facts." Dyvex maintains that all of the correct facts were previously available to Agilex defendants and due to their lack of diligence during the discovery period they failed to uncover the real facts. As such, Dyvex argues that Agilex should not be allowed to "unilaterally re-open discovery to make up for the lost opportunity to discover the facts." (Doc. No. 68, at 17).

Agilex defendants state that the discovery they seek is essentially expert discovery and should be permitted since they need to rebut the facts and opinions of Dyvex's experts, including their conclusions that Dyvex was processing PP during the relevant time. Agilex state that they need to obtain more facts through discovery, including second depositions of Depoti and Strony, for the rebuttal reports of their experts. As such, Agilex seek the court to allow them to conduct the stated additional discovery after the deadline to respond to the rebuttal reports of Dyvex's experts regarding certain facts in the reports.

"A rebuttal or reply expert report is proper if the intent of the report is 'solely to contradict or rebut evidence on the same subject matter identified'

10

by the opposing party's expert report.'" Withrow v. Spears, 967 F.Supp.2d 982, 1001 (D.Del. 2013) (citations omitted). "Such rebuttal and reply reports 'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.'" Id. at 1002 (citations omitted). Agilex maintain they require additional discovery so that the rebuttal reports of their experts can contradict or rebut the contents of Dyvex's rebuttal expert disclosures. Agilex states that Dyvex has failed to supply them with complete facts during the discovery process. Dyvex counters by stating that the issues involved in Agilex's untimely requests for more discovery were well known before the discovery deadline expired and should have been addressed during the allotted time period. As such, Dyvex states that Agilex should not be granted modifications of the scheduling order to unilaterally conduct additional fact discovery after the deadline since they were not diligent and cannot show good cause pursuant to Fed.R.Civ.P. 16(b)(4) and 6(b)(1)(B). Dyvex also contends that it will suffer undue prejudice and delay in this 2012 case in which it has already expended considerable money during lengthy discovery if Agilex is permitted to re-open discovery at this late date on the eve of the expert depositions, including the possible cost of obtaining additional expert reports if any new facts are found.

The court will now consider the affidavits upon which Dyvex's experts relied in their rebuttal reports and determine if they warrant further discovery by Agilex.

### A. Affidavits of Joseph Depoti and Robert Strony

Agilex seeks to re-depose Depoti and Strony, in part, regarding their averments in their affidavits that Dyvex was processing PP at the time of the fire because they claim these averments contradict Manchio's testimony as well as their own prior testimonies. Agilex also states that Strony and Depoti were identified as expert witnesses by Dyvex in its initial expert disclosures, and that they can be deposed as expert witnesses, including asked questions about the fragrance oil that was being processed in the kneader machine Manchio was operating at the time of the fire.

The court agrees with Dyvex that the averments in the affidavits of Depoti and Strony are not contradictory to their deposition testimonies. Nor are the affidavits contradicted by Manchio's testimony. Agilex contends that Manchio testified that Dyvex was not running PP at the time of the fire. However, Dyvex states that Manchio is not the best witness on this subject since Depoti started the processing of PP before Manchio's shift started, and that Strony took over when Depoti left and remained in the plant for several hours during Manchio's shift. As such, Dyvex states that Manchio had nothing to do with the sequence of oils processed or the placement of the oil drums on the night in question, and that no fragrance oil change occurred during Manchio's shift. In fact, Manchio testified that when he arrived for work at 7:00 p.m. on June 2, 2010, PP was being processed and that he did not switch to another fragrance oil at any time. (Doc. No. 73-17, at 3). As Dyvex explains,

Agilex had ample opportunity to ask all of their questions to Depoti and Stony regarding which oil was being processed when they were deposed. Agilex also could have questioned Depoti and Strony during their depositions regarding the reasons why they could not obtain financing to re-build their facility. Further, the affidavits of Depoti and Strony are factual in nature and do not contain opinions entitling Agilex to depose them at this time as experts. (Doc. No. 68-9, Doc. No. 68-10).

Thus, Agilex's subpoenas to re-depose Depoti and Strony are **QUASHED**.

### B. Affidavit of Rebecca Jones

Agilex states that the affidavit of Rebecca Jones, an employee of Mander Fire & Safety ("Mander"), contradicts the testimony of former Dyvex Vice President David Pettinato, who testified that Dyvex had experienced small fires on numerous occasions that required the use of fire extinguishers and that he would occasionally walk around the facility with a fire extinguisher. (Doc. No. 73-3). Dyvex's experts relied upon Jones' affidavit in their rebuttal reports. Agilex states that the invoices from Mander reflect the use of fire extinguishers Pettinato referenced and the need for their recharging. Jones was not deposed during discovery and Dyvex states that Agilex fails to explain why. Dyvex claims that Agilex was aware of Jones and her ability to explain the invoices three years ago and was not diligent in timely deposing her. Further, Dyvex states that Pettinato later testified that some of the fires self-

13

extinguished and that all of the other fires just required a puff or two from the fire extinguisher.

Pettinato's inconsistent testimony provides a sufficient reason to allow Agilex to depose Jones, including questioning her about her allegations that she was not contacted by anyone from Agilex to ask for an interpretation of Mander's invoices or an explanation of the services it provided to Dyvex. As such, Agilex will be permitted to take the deposition of Jones.

### C. Affidavit of Michael Zazula

Agilex states that they should be permitted to depose Michael Zazula and subpoena his records from his former and current employers, Plick & Associates and Investigative Engineering, Inc., because Dyvex converted him from a non-testifying expert consultant into a testifying fact witness. Agilex states that on May 20, 2013, they requested production of "All photographs and/or videotapes and/or newspaper articles depicting and/or concerning the fire or subject Buss kneader machine or fragrance oils taken prior to the incident" and that photographs taken by Zazula were not given them until May 14, 2015. Agilex contends that Zazula's photographs were then relied upon by Dyvex's experts in their rebuttal reports. Agilex also states that the files from Zazula's employers should be provided since he is now a testifying witness. Further, Agilex points out that Zazula's affidavit refers to conversations he allegedly had with their expert Thomas Long, P.E., in 2010 which Dyvex now treats as a fact. Long opined that Dyvex was not processing

14

PP in the kneader machine when the fire occurred and renders an opinion regarding spoliation of evidence by Dyvex.

Dyvex has established that Zazula's photographs were produced on a CD as part of its Rule 26 Initial Disclosure served on February 25, 2013, and that they were not just recently provided to Agilex. (Doc. No. 74-2, Doc. No. 74-3). The court also finds that Zazula is and always was a fact witness who was known to Agilex since the beginning of this case when he was present at the July 29, 2010 joint fire scene examination along with representatives of Agilex. Also, even though Dyvex provided the facts in Zazula's possession relating to the spoliation claims, it did so after those claims were made in Agilex's experts' reports. Both parties were well aware that Zazula had knowledge on the issue of evidence preservation, and Agilex could have deposed him during the lengthy discovery period. Indeed, Agilex should have deposed Zazula if they wanted to know Dyvex's response to their experts' spoliation claims.

Since Zazula's photographs were produced long before Agilex submitted their expert reports, and since Agilex knew that Zazula was aware of the evidence preservation issue, Agilex will not be allowed to depose Zazula. Additionally, Agilex is not entitled to the documents they requested from Zazula's former and current employers. Thus, Agilex's subpoenas to depose Zazula and to produce his employers' documents are **QUASHED**.

15

### *D. Affidavits of William Boyle and William Farber*

Agilex defendants state that the affidavits of William Boyle and William Farber, formerly of Community Bank & Trust ("CB&T"), contain averments regarding financing for Dyvex to re-build its facility that are not supported by the documentation from the bank and from the documents they were provided. Agilex state that it requested such information from Dyvex in their discovery requests and that they were invited to review and copy additional documentation regarding damages in Dyvex's counsel's office. Agilex provide support to show that they did make arrangements to inspect and copy the additional documents in early August 2013, but the documents were not provided. (Doc. No. 73-4). However, Dyvex indicates that it did provide Agilex with copies of some of the documents later in August 2013. (Doc. No. 74-4). Dyvex also contends that Agilex lacked diligence in taking discovery regarding the refusal of banks to finance the reconstruction of its plant despite Strony's testimony about this issue. Dyvex states that if Agilex pursued this inquiry during discovery, they would have been led to Farber and Boyle as well as the documents of their banks. Dyvex also states that if Agilex defendants were diligent, it would not have needed the rebuttal affidavits of Farber and Boyle.

Since it is not clear if Dyvex is in possession of additional documents it intends to use at trial which have not been provided to Agilex, and since Boyle and Farber may be called as witnesses at trial to establish damages, Agilex is entitled to all of the documents requested from Dyvex concerning CB&T

16

Bank as well as the supporting documentation for the affidavits at issue. Agilex will also be allowed to depose Boyle and Farber.

## III.   **CONCLUSION**

The court finds that Agilex has shown good cause to allow them to conduct portions of the additional fact discovery they seek which does not raise new legal theories and issues. With respect to the supplemental discovery that is permitted, Agilex is attempting to address additional facts presented in the affidavits relied upon by Dyvex's experts in their rebuttal reports. As such, Agilex would be unduly prejudiced at trial without the additional discovery. However, with respect to the subpoenas of Agilex which have been quashed, the court finds that Agilex failed to exercise due diligence during the discovery period. An appropriate order will issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE**: **December 28, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-979-03.wpd