**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DYVEX INDUSTRIES, INC.,** : | |
| **Plaintiff,** : | Civil No. 12-CV-0979 |
| v. : | (JUDGE MANNION) |
| **AGILEX FLAVORS &** : | |
| **FRAGRANCES, INC., et al.,** : | |
| **Defendants** | |

# MEMORANDUM

Pending before the court is the partial motion for summary judgment of defendants Agilex Flavors & Fragrances, Inc., Aromatic Technologies, Inc. and Aroma Tech (collectively referred to as "Agilex"), (Doc. 100), regarding Count V of the complaint, (Doc. 1), filed by plaintiff Dyvex Industries, Inc. ("Dyvex") seeking punitive damages. Dyvex claims that the evidence shows Agilex's conduct in providing it with a defective fragrance oil was outrageous and based on an evil motive that was wanton, reckless, and malicious. The motion has been fully briefed by the parties. Based upon the court's review of the motion and related materials, the court will **GRANT** Agilex's motion and **JUDGMENT** will entered in favor of Agilex on Dyvex's claim for punitive damages.

## I. BACKGROUND

This case arises out of an industrial fire that was allegedly caused by defective Perfectly Pomegranate Gras Oil ("PPG") polymer fragrance oil

produced by Agilex and used by Dyvex as an ingredient to manufacture "fragrance concentrate products." On June 3, 2010, Dyvex was using the oil in the manufacturing process when it allegedly caught fire and "caused extensive damage" to the plant and surrounding property, rendering its building unusable and causing its business operations to halt. On May 24, 2012, Dyvex sued Agilex defendants, all companies "engaged in the business of formulating, producing, selling and distributing" the scented oil that allegedly caused the fire. During the relevant time, Dyvex was mixing polymers with fragrance oils, allegedly using oils produced by Agilex, to make its product, namely, scented plastic concentrate pellets used in air fresheners. Dyvex alleged, in part, that Agilex defendants were negligent and that their product was defective.

In its complaint, Dyvex raises claims against Agilex for negligence, strict liability, breach of contract, and breach of warrant, and asserts a request for punitive damages, Count V.[1] (Doc. 1, 4-11). Dyvex alleges that the fire at its facility "was caused to occur by the culpable conduct of Agilex, ..., in supplying a fragrance oil for Dyvex to incorporate into polymer fragrance concentrate products that Agilex knew or should have known presented an unreasonable risk of fire, and was unsafe and unsuitable for use in the [Buss-Kneader] machine for which it was supplied." (Id. at 6). In Count V, Dyvex

---

[1] Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003).

2

alleged that the actions of Agilex were performed with "reckless indifference, were willful and were careless and outrageous and were done in blatant disregard to the health and well being of the ultimate user, such as [Dyvex], so as to shock the conscious of the reasonable and ordinary person."

Agilex filed its answer with affirmative defenses to Dyvex's complaint as well as a third-party complaint against BUSS, Inc. and Manchio on August 7, 2012.[2] (Doc. 5). Agilex's third-party complaint alleged, in part, that "[a]ny and all losses and damages allegedly sustained by plaintiff were the sole and direct result of the negligence, carelessness, and recklessness of Frank Manchio", an employee of Dyvex, regarding his operation, maintenance, or repair of the BUSS kneader machine. (Doc. 5, at 23, ¶10).

On December 4, 2015, the summary judgment motion of Manchio, (Doc. 69), was granted, and the remaining third-party claims of Agilex against him individually were dismissed. Also, Manchio was dismissed from the case. (Doc. 79).

On April 3, 2017, Agilex filed its partial motion for summary judgment as to Dyvex's claim for punitive damages. (Doc. 100). Agilex argues that the evidence fails to show that its conduct amounts to the culpable mental state required under Pennsylvania law to prove the recklessly indifferent conduct

---

[2]Third-party defendant BUSS was dismissed from this action with prejudice via stipulation and court order on March 30, 2015. (Doc. 59, Doc. 60).

3

which would allow a jury to award Dyvex punitive damages against it. Agilex simultaneously filed its brief in support of its motion. (Doc. 103). After an extension of time, Dyvex filed its brief in opposition on June 29, 2017. (Doc. 148). Agilex then filed its reply brief on July 13, 2017. (Doc. 151). The parties attached exhibits to all of their briefs.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility

determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III. DISCUSSION

Pennsylvania law allows punitive damages when the defendant has an evil motive or reckless indifference to the rights of others. Punitive damages are available only when the "defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct." Hutchinson v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984) ).*See also* Hoffman v. Paper Converting Machine Co., 694 F.Supp.2d 359, 374 (E.D.Pa. 2010) ("Under Pennsylvania law, punitive damages are appropriately awarded when a defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others.") (citation omitted). This type of damage is not compensatory in nature, but is meant "to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious." Phillips v. Cricket Lighters, 883 A.2d 439, 446 (Pa. 2005). "Punitive damages are an extreme remedy that should be applied sparingly and only in the most exceptional matters." Hoffman, 694 F.Supp.2d at 374 (citation omitted).

To establish a claim for punitive damages the evidence must be sufficient to show that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act . . . in conscious disregard of that risk." Hutchinson, 870 A.2d at 772. "[T]he determination of whether an individual was reckless inherently involves a fact-finding inquiry." Mulholland v. Gonzalez, 2008 WL 5273588, *3 (E.D.Pa.

2008).

"Plaintiffs' burden is ultimately to 'adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to 'intentional, willful, wanton or reckless conduct....'" Hoffman, 694 F.Supp.2d at 374 (citations omitted). Further, "because punitive damages are intended to punish the tortfeasor for outrageous conduct and to deter him and others like him from similar conduct in the future, [t]he state of mind of the actor is vital." Id. (citations omitted). Thus, punitive damages "are not awarded to compensate the plaintiff for his losses but rather to punish defendant for egregious actions." Id. (citations omitted).

Agilex's argues that the evidence shows that it did not retain any control over any aspect of Dyvex's manufacturing process, and that Dyvex has not presented any evidence to show that it had the requisite culpable mental state for an award of punitive damages. Further, Agilex states that Dyvex has failed to sufficiently show that it was using, in its manufacturing process, a fragrance oil obtained from Agilex at the time of the fire. Additionally, Agilex maintains that Dyvex has not presented any evidence to show the flashpoint of any oil it was using at the time of the fire was 93° Fahrenheit ("F"), a level considered to be flammable. Agilex indicates that it tested the flashpoint of its PPG oil prior to shipping it to Dyvex for processing and that it had an acceptable flashpoint of 103° F. Agilex also states that it tested the PPG oil after it was notified of the fire at Dyvex and, it had a flashpoint of 103° F. Agilex then

states that it "analyzed the PPG oil contained in the 55 gallon drums that were stored inside the Dyvex facility at the time of the fire and its flashpoints did not test below 103° F. Agilex then analyzed the 'virgin' retain samples of PPG oil in its possession, and which were not subjected to the fire, and again its flashpoints did not test below 103° F." Agilex also points out that Dyvex failed "to test the 'virgin' retain samples that were not subjected to the effects of the fire, and it has no expert to refute the objective findings of [Agilex] and its expert witnesses." (Doc. 151 at 9-10).

Agilex further states that it was in compliance with any applicable federal law and/or department of transportation regulations regarding the shipping of combustible and flammable materials to Dyvex, and that Dyvex has not presented any evidence to the contrary. As such, Agilex states that the evidence shows its conduct was not outrageous due to evil motive or reckless indifference to the rights of Dyvex.

Moreover, Agilex states that Dyvex has failed to even address its evidence (Exhibit E, Expert Report of R. Thomas Long) that, prior to the fire, Dyvex had for years used fragrance oils with flashpoints lower than 103° F. Agilex also states that Dyvex cannot prove that it acted with reckless indifference of a known risk of harm, in part, since "[Dyvex] cannot point to one other fire ever occurring during the processing of a fragrance oil, with any flashpoint, anywhere inside of a kneader machine, including the ongoing 7+ years of processing of PPG oil since the time of this fire without incident."

8

(Id. at 11). Essentially Agilex is contending that there is no evidence that it was aware of any fires similar to the one that damaged Dyvex's facility. Regardless, "a defendant's mere knowledge of other accidents involving a product is insufficient to support a claim for punitive damages." Hoffman, 694 F.Supp.2d at 374 (citing Phillips, 883 A.2d at 446 ).

Agilex's evidence also shows that Dyvex developed its own unique proprietary polymer compounding formulation and process, and that, on the night of the fire, Dyvex allowed Manchio, an untrained and inexperienced temporary employee to work alone contrary to its policies and procedures. Agilex indicates that these factors, as well as its evidence showing that Dyvex did not develop a disaster plan and failed to install recommended proper safety features, including a fire suppression system at its facility, could have caused the fire.

Dyvex essentially argues that Agilex supplied it with a fragrance oil to be used in its (Dyvex's) polymer compounding process that Agilex knew or should have known presented an unreasonable risk of fire. Dyvex points to its evidence in the nature of its post-fire tests that showed Agilex's PPG had a "low flashpoint", i.e., 93 °F., instead of 103 °F., which rendered it as a "flammable hazard" under federal law. Dyvex also contends that its evidence shows that it was processing one of the three 55 gallon drums of Agilex's PPG at the time of the fire, a fact that is disputed by Agilex's evidence. Dyvex states that it had more than a 12 year relationship with Agilex to supply it with

fragrance oils and that it was not permitted to alter the fragrance sent to it by Agilex. Dyvex argues that Agilex maintained control over the processing of its PPG for its clients. Dyvex's evidence also shows that it relied upon Agilex to supply it with fragrance oils that had flashpoints within the appropriate range for its process of producing scented plastic pellets.

At the time of the fire, Dyvex states that Agilex sent it the PPG to produce a product for its (Agilex's) client, "Scentsy." According to Dyvex's evidence, the PPG had to be modified for use in polymers and the PPG's reformulation was required since the original formula was not necessarily suitable for polymer processing. Thus, the original oil, unlike most oils, was intended for wax, and needed to be modified for polymer compounding. Dyvex contends that this was significant because it was the first time "Agilex convert[ed] an oil that was intended for wax to be compatible with polymer processing." Previously, fragrance oils were "developed from scratch for polymer processing." Dyvex further states that Agilex did not indicate that it's PPG was "revised for application in a manner never before attempted by [Agilex], nor that the 'gras' [generally recognized as safe] oil intended and modified for polymer was in any way different than other oils previously shipped by Agilex to Dyvex, and that the flash point of PPG was a significant departure from prior oils." Dyvex also states that Agilex's literature incorrectly indicated that the flash point of the PPG was categorized as "combustible" when it was really "flammable."

In short, Dyvex argues that since Agilex had no experience in modifying an existing oil formula for polymer processing and that Agilex was aware that reformulating an oil rendered it "different," Agilex' conduct in supplying it with the PPG containing the modified oil rose to the level of reckless indifference sufficient to allow a jury to award it punitive damages. Dyvex states that Agilex's conduct meets the standard since it provided Dyvex a fragrance oil having a flashpoint of 93 °F., which was below the previous fragrance oils Dyvex processed, and it failed to explicitly warn Dyvex of the flammability hazards for this shipment of PPG,

All of Dyvex's evidence is disputed by Agilex's evidence, including evidence that it had a process in place before 2010 for modifying an existing fragrance that was used in wax melts and getting the odor into a fragrance to be used for polymer compounding, as well as evidence that the flashpoint of the PPG in question was 103 °F., within the acceptable level. Thus, Agilex maintains that it had no duty to warn Dyvex and, that it was not wanton by shipping PPG with a flashpoint of 93 °F.

Initially, to the extent that Dyvex argues that the parties entered into a contract in 1999 (i.e., Agreement QP6.2) which, it alleges, imposed a duty on Agilex to provide it with safe fragrance oils and, that Agilex breached this duty, this alleged contract, which Agilex disputes ever existed, is of no moment regarding the present motion since it is well-settled that Pennsylvania law does not allow the recovery of punitive damages in a breach of contract

action. *See* Dehart v. HomEq Servicing Corporation, 679 Fed.appx. 184, 189 (3d Cir. Feb. 8, 2017) (citation omitted).

The court has reviewed the exhibits submitted by the parties and, despite some disputed facts in this case, finds clearly insufficient evidence presented by Dyvex to meet its burden to show that Agilex's conduct amounted to "intentional, willful, wanton or reckless." Dyvex's evidence simply does not show a culpable state of mind on the part of Agilex as required to obtain the extreme remedy of punitive damages, which are penal in nature and only proper if Agilex's conduct was so outrageous as to show willful, wanton, or reckless conduct. Snead, 929 A.2d at 1184. There is not sufficient evidence that Agilex knew its PPG was unsafe and that it sent the PPG to Dyvex despite this knowledge. Indeed, Agilex's experts have found that Agilex's design for its PPG was safe, which is exemplified by the fact that no evidence was submitted showing that a fragrance oil ever caught fire during the polymer compounding process prior to or after Dyvex's fire. Nor has Dyvex adduced any evidence that Agilex had an improper or evil motive regarding its alleged conduct, i.e., the production and distribution of its PPG to Dyvex. Also, the evidence does not show that Agilex or any of its personnel had an evil motive or were recklessly indifferent to the rights of Dyvex by producing and distributing unsafe PPG to Dyvex. *See* Feld v. Merriam, 506 Pa. 383, 396, 485 A.2d 742, 748 (1984) (With respect to punitive damages, "state of mind of the actor is vital" and "[t]he act, or the failure to act, must be

intentional, reckless or malicious.").

At best, Dyvex's evidence may establish that Agilex's conduct was negligent. This is legally insufficient to obtain punitive damages. As such, the court finds that Dyvex has failed to produce sufficient evidence to create a jury question on the issue of punitive damages. Thus, the conduct of Agilex, as a matter of law, does not rise to the requisite level to allow the extraordinary remedy of punitive damages against it. *See* Thomas ex rel. Thomas v. Staples, Inc., 2 F.Supp.3d 647 (E.D.Pa. 2014) (court found that the alleged conduct of defendant company in failing to design a paper shredder with a guard, which was a known danger, based, in part, on a federal publication, to children did not amount to conduct that was "'particularly egregious' enough to warrant the 'extreme remedy' of punitive damages.").

## IV. CONCLUSION

Accordingly, Agilex's motion for partial summary judgment, (Doc. 100), regarding Dyvex's claim for punitive damages, (Count V), will be **GRANTED** and, **JUDGMENT** will be entered in favor of Agilex and against Dyvex on this claim. An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE**: **February 12, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-979-04.wpd