**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DYVEX INDUSTRIES, INC.,                    :

    **Plaintiff,**                    :                    **Civil No. 12-CV-0979**

    **v.**                    :                    **(JUDGE MANNION)**

AGILEX FLAVORS &                    :
FRAGRANCES, INC., et al.,
                        :

    **Defendants**

## MEMORANDUM

Pending before the court is the partial motion for summary judgment of plaintiff Dyvex Industries, Inc. ("Dyvex"), (Doc. 93), seeking to preclude defendants Agilex Flavors & Fragrances, Inc., Aromatic Technologies, Inc. and Aroma Tech (collectively referred to as "Agilex") from imposing duties of care on Dyvex which Dyvex contends do not exist between the parties and from relying upon industry safety standards to show that Dyvex violated the duties of care it owed to Agilex. Also pending is Dyvex's companion motion to completely preclude one of Agilex's expert witnesses, Wendell D. Rust, of OSHA Safety Expert, Inc., from testifying at trial, including rendering any opinions regarding the alleged duties and standards of care Dyvex owed to Agilex.[1] (Doc. 94). This is a product liability case in which Dyvex alleges that Agilex's defective Perfectly Pomegranate Gras Oil ("PPG") polymer fragrance oil caused a fire while it was being processed and destroyed its facility. Dyvex

---

[1]Dyvex's motion to preclude Rust's testimony will be addressed in a separate Memorandum. (Doc. 94).

moves for partial summary judgment claiming that it does not owe Agilex any duty of care to comply with Occupational Safety and Health Administration ("OSHA") regulations as well as other safety provisions, that Agilex does not have legal standing to assert violations of the safety provisions and building and fire codes as defenses to its claims, and that Agilex cannot raise any defenses related to the contractual relationship between Dyvex and its insurer Nationwide. Based upon the court's review of the motion and related materials, the court will **GRANT IN ITS ENTIRETY** Dyvex's partial motion for summary judgment.

## I.    BACKGROUND[2]

This case arises from a June 3, 2010 fire at the Dyvex plant in Carbondale, Pennsylvania.  Dyvex was making fragrant plastic pellets using a Buss kneader machine, which compounded two raw materials, namely, unscented polymer plastic pellets and a fragrance oil, into fragrant plastic pellets. Agilex was a customer of Dyvex and paid Dyvex to make fragrant plastic pellets for it. Agilex supplied Dyvex with its fragrance oil, Perfectly Pomegranate Gras Oil ("PPG"), which was allegedly being processed by Dyvex at the time of the fire. Dyvex alleges that Agilex's PPG was defective

---

[2]Since the court recently stated the background of this case in its February 12, 2018 Memorandum, granting Agilex summary judgment with respect to Dyvex's claim for punitive damages, Count V, it shall not fully repeat it herein. (Doc. 152).

and that Agilex knew or should have known that its PPG fragrance oil had a flash point that was dangerously low.

The remaining claims raised by Dyvex in its complaint, (Doc. 1), against Agilex are for negligence, breach of contract, breach of warrant, and strict liability.[3] Agilex formulates fragrance oils that are used in products such as air fresheners and personal care products. Agilex supplied fragrance oil to Dyvex for use in Dyvex's polymer fragrance concentrate products. Dyvex alleges that Agilex supplied the fragrance oil that was being processed at the time of the fire. After Dyvex compounded the plastic pellets with the fragrance oil, it would send the resulting fragrant plastic pellets to Agilex for use in various products. Agilex in turn would pay Dyvex for the compounding process and for the polymer. Dyvex basically claims that Agilex's PPG fragrance oil was defective and created an unreasonable risk of fire, and that the June 3, 2010 fire at its facility was caused by Agilex's PPG that was being processed at the time. Dyvex also alleges that the PPG was unsafe and unsuitable for use in its Buss-Kneader machine, and that Agilex failed to warn it of PPG's dangers, including its 93 degree flash point.

On March 31, 2017, Dyvex filed its partial motion for summary judgment, (Doc. 93), regarding various defenses Agilex's has raised with respect to Dyvex's claims and simultaneously filed its brief in support of its

---

[3]Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003).

motion, (Doc. 95), as well as its statement of material facts, (Doc. 96). After an extension of time, Agilex filed its brief in opposition on June 26, 2017, (Doc. 144), and its counterstatement of material facts, (Doc. 145).[4] Dyvex then filed its reply brief on July 6, 2017. (Doc. 149). The parties attached exhibits to their filings.

## II.   **DISCUSSION**[5]

Dyvex seeks partial summary judgment to preclude Agilex from asserting defenses to its claims which rely upon certain duties and legal relationships which Dyvex argues do not exist between them, namely: "(1) the employer-employee relationship that is the province of the workplace safety rules in OSHA and its regulations; (2) the property owner-code enforcement official relationship governed by local and state building laws and codes; and (3) the insurer-insured relationship by which decisions are made whether and

---

[4]The court will only consider Agilex's counterstatement of material facts, (Doc. 145), to the extent it addresses Dyvex's statement of material facts and not to the extent that it adds new evidence and seeks to supplement its expert reports. Dyvex's statement of material facts and Agilex's counterstatement of material facts both state facts without citing to the record for support contrary to Local Rule 56.1, M.D. Pa. Further, the court does not consider legal arguments and conclusions in either statement. The court also notes that Agilex failed to specifically respond to Dyvex's statement of material facts as required by Rule 56.1.

[5]The court does not repeat the standard for a summary judgment motion which was stated in its February 12, 2018 Memorandum, (Doc. 152), and the standard is incorporated herein by reference.

at what premium to cover certain insurable risks." Dyvex states at the time of the fire, Agilex was not its employee and thus, Agilex cannot invoke OSHA or other safety standards, such as ANSI and BOCA, which impose a duty on employers to furnish its employees with safe workplaces. Dyvex also states that Agilex was not a party to its relationship with the local and state code enforcement officials who reviewed and approved its building plans, who conducted inspections of its building, and who approved its occupancy of its building without an automatic fire sprinkler system. Further, Dyvex states that Agilex is not a party to its relationship with its insurer Nationwide, the subrogee, and thus, Agilex has no standing to argue that Nationwide owed Agilex a duty to inspect Dyvex's building and require Dyvex to have a safer building in the event of a fire. Dyvex also filed a motion to preclude Rust from testifying for Agilex at trial pertaining to defenses based, in part, on the alleged duties which Dyvex owed to Agilex. Agilex seeks to offer evidence at trial, including Rust's testimony, regarding its affirmative defenses to show that Dyvex's conduct was the cause of the fire and not its PPG, and that Dyvex's conduct in failing to adhere to the safety standards greatly increased its damages. The court will now consider Dyvex's partial summary judgment motion.

Dyvex contends that "[it] owed no common law or statutory duty to Agilex to comply with OSHA, with state or local building codes, or with any recommendations made by Nationwide." Dyvex argues that OSHA does not

give anyone, including Agilex, a private right of action. Dyvex states that Agilex, a third-party supplier of raw materials in this case, does not have a right to assert an OSHA violation against it in defense of its claim that Agilex provided it with a defective product. Dyvex contends that Agilex should not be allowed to present any evidence at trial to show that Dyvex violated OSHA and the other safety standards, especially since Agilex is not its employee, and that Agilex's experts should not be allowed to testify as to any opinions that Dyvex violated these standards. As such, Dyvex states that Agilex does not have legal standing to invoke OSHA and the other safety standards, and that Agilex's defenses based on OSHA should be precluded.[6]

Dyvex also argues that Agilex does not have standing to invoke violations of building codes that it may have committed and that enforcement of the building code is only "between the authority having jurisdiction, i.e., Carbondale or Pennsylvania, and the building owner."

Dyvex further states that insofar as Agilex requests the court to find Dyvex negligent *per se* as a matter of law based on its alleged violations of building codes, it is improperly trying to convert its brief in opposition to Dyvex's partial summary judgment motion into its own partial summary judgment motion.

Finally, Dyvex argues that Agilex cannot intervene in the relationship

_____

[6]The OSHA regulations are all found at 29 CFR.

between Dyvex and its insurer, Nationwide, which is not a party in this case. Agilex states that "Dyvex and Nationwide are both owners or *defacto* owners [of Dyvex] acting in concert as one with vested business interests that are aligned." Agilex points to the fact that Dyvex bought its insurance through Donna Depoti, an insurance agent and the wife of Joseph Depoti, one of Dyvex's owners, and to the fact that Donna Depoti co-signed for a business loan Dyvex received. Dyvex states that "Agilex has never shown that Dyvex's insurance dealings with [Donna Depoti] had any real consequences to Dyvex, much less to Agilex." Dyvex also states that Agilex has failed to establish "that by co-signing for the bank loan, Donna Depoti much less Nationwide somehow acquired a duty to Dyvex or to Agilex."

Agilex seeks to offer a defense that if Nationwide had properly underwritten Dyvex's policy and properly inspected its building, and if Nationwide required Dyvex to comply with OSHA regulations and the other safety standards, including requiring Dyvex to add a sprinkler system, the fire would not have occurred or, the property damage at Dyvex's building would have been significantly reduced. Dyvex states that such a defense should be precluded since Nationwide's underwriting procedure was only for its own business purposes to inspect Dyvex's building to assess the insurable risk. Dyvex states that "[s]uch underwriting functions are performed for Nationwide's benefit, not anyone else's" and, that "Nationwide sought only to make a good business decision as to whether to insure the business and, if

so, how to set a premium commensurate with the risk." Dyvex also states that Nationwide was not an OHSA compliance force or a code enforcement official and, that Nationwide owed no duty to reduce the exposure of a third-party product supplier like Agilex who sent Dyvex fragrance oil.

The court will first consider whether Agilex should be precluded from asserting any defense to Dyvex's claims based on its contention that Dyvex violated OSHA as well as other safety regulations and standards. Dyvex points to the facts that prior to the fire, there is no evidence that OSHA officials ever inspected Dyvex's facility and that Dyvex was not cited by OSHA for any violations. Dyvex also states that it did not receive any notice of a deficiency regarding its OSHA compliance. Dyvex further states that after the fire, OSHA did not investigate the fire and it did not cite Dyvex for any OSHA violations. Thus, there is no evidence that Dyvex was actually found to have violated any OSHA regulations by OSHA itself. Rather, Agilex relies upon its expert reports as well as Rust's deposition testimony, to support its contention that Dyvex was not in compliance with several OSHA provisions and other safety regulations.

In its partial summary judgment motion, Dyvex seeks, in part, to preclude Agilex from asserting any defenses to its claims based on the alleged OSHA violations and violations of building codes as well as other safety statutory provisions and regulations. Agilex argues that if Dyvex had complied with OSHA and building code requirements along with other safety

8

standards, such as a sprinkler system, it would have prevented the fire at its building or reduced Dyvex's property damage allegedly caused by Agilex's PPG.

There is no dispute that at the time of the fire, Agilex was not an employee of Dyvex. As such, Dyvex argues that Agilex "has no right to invoke OSHA or other safety standards which require employers to furnish employees with safe workplaces" in defense of Dyvex's claims. Dyvex states that it did not owe any duty to Agilex based on OSHA regulations or the other safety standards. Dyvex states that OHSA does not create a right owing to third-parties such as Agilex who are not involved in the employer-employee relationship. Dyvex basically states that OSHA is limited to employees of an employer and since Agilex was not its employee, the OSHA regulations cannot be used by Agilex as a defense to its claims.

Agilex has asserted several affirmative defenses in its answer to Dyvex's complaint, including Dyvex's comparative fault, failure to comply with various laws, codes and regulations, failure to act with ordinary and reasonable care, and failure to mitigate its damages. Agilex states that it should be allowed to assert its affirmative defenses at trial which it developed during discovery and which it presented through expert reports and testimony (such as Rust's testimony) to support. Agilex argues that its defenses based on OSHA, American National Standards Institute ("ANSI"), BOCA, and other regulations "go[] to the nature of [Dyvex's] proprietary processing operations

inside its facility at the time of the fire, not to the physical design, construction and initial inspection of a building more than a decade before the fire." Agilex states that "[p]roviding building fire prevention conditions in accordance with the Federal OSHA standards is mandatory" and, that "Dyvex and Nationwide were both careless and indifferent to these mandatory OSHA requirements." It states that since the time Dyvex's building was constructed, "Dyvex was in a continual state of non-compliance with the required Federal OSHA fire protection requirements to have adequate fire prevention and fire suppression." Agilex points out that even though the Department of Labor only cites employers for OSHA violations, as its experts indicate, "OSHA & ANSI are evidence of the standard of care that must be met [by a company]." Agilex states that Rust details in his report the standards and regulations applicable to Dyvex, including those standards established by OSHA, ANSI, BOCA, the International Building Code, the ICC. Agilex also states that Rust is qualified to opine that "dangerous work procedures and unsafe work practices at the Dyvex facility lead to this fire and contributed to the needless destruction of [its] facility." Rust basically opines that if Dyvex had the proper fire safety prevention standards in place as required by the stated provisions and codes, it would have been able to put out the fire and minimize any damages to its building.

Further, Agilex states that its other expert, Thomas Long, is qualified to render opinions regarding the applicability and requirements of the building

10

and fire regulations and codes to Dyvex's building and how Dyvex was in violation to those regulations and codes.

Ths court now considers whether OSHA regulations and the other safety standards as well as the building codes are admissible as evidence by Agilex regarding the standard of care to which Dyvex should be held for purposes of Agilex's defenses to Dyvex's strict liability and negligence claims. Agilex relies, in part, on Rolick v. Collins Pine Co., 975 F.2d 1009, 1013-14 (3d Cir. 1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1417 (1993), to support its contention that OSHA regulations are relevant evidence of the standard of care applicable to Dyvex and that violations of OSHA are evidence of negligence. Agilex also points out that Pennsylvania's Suggested Civil Jury Instructions §13.110 refers to ANSI standards and OSHA regulations as being relevant to a party's negligence.

Agilex also cites to the Wood v. Smith, 495 A.2d 601 (Pa. Super. Ct. 1985), case for support. On appeal, the Superior Court found that the trial court should have instructed the jury regarding the legal significance of government and industry standards, including OSHA and ANSI, which standards were presented as evidence at trial. The Superior Court also found that the evidence showing the scaffolding constructed by the defendant was not in compliance with OSHA and ANSI standards was properly admitted as evidence to show that the defendant breached its duty of care owed to plaintiff. Agilex states that "*Wood* makes it clear that where evidence of OSHA

11

and ANSI standards is admitted at trial, the jury instruction must reflect the degree of care mandated by OSHA and ANSI standards, the violation of which is evidence of negligence." It then states that its experts will opine that OSHA and ANSI standards are evidence of the standard of care that Dyvex was required to meet. Specifically, Agilex states that Rust lists all of the standards and regulations that applied to Dyvex's "operation of a plant that was processing chemicals to produce a new chemical compound that was unique and proprietary – fragrance infused plastic pellets." Further, Agilex points out that Rust is highly qualified to opine as to all of the regulations and standards which Dyvex violated and that "dangerous work procedures and unsafe work practices at the Dyvex facility lead to this fire and the needless destruction of the facility." Additionally, Agilex states that Rust can opine that Dyvex was required to have a sprinkler system at its building. (*See* Doc. 144 at 13). Agilex also contends that the regulations and standards are relevant "to show that [Dyvex] failed grossly to hire competent persons, to ensure that a job hazard analysis was performed, to properly train its personnel, to have policies and procedures in place to safeguard its people and property."

Moreover, Agilex states that the court should enter partial summary judgment in its favor since Dyvex was "negligent *per se* in failing to have installed the requisite automatic sprinkler system in violation of BOCA National Building Code as adopted by the City of Carbondale." Agilex is essentially seeking to assert a negligence *per se* counterclaim against Dyvex

based on Dyvex's alleged violations of certain building codes. Agilex was required to have filed a counterclaim long ago in this 2012 case. Agilex was also required to file its own motion for partial summary judgment based on any claim that Dyvex was negligent *per se*, as opposed to asserting it in its opposition brief to Dyvex's motion. Since Agilex did not properly assert a negligence *per se* claim against Dyvex, and the time to do so has long expired, the court will not consider Agilex's request in its opposition brief for partial summary judgment on such a claim.

There is no question that if the court finds Dyvex owed a duty of care to Agilex, then Agilex can introduce evidence, including its expert reports and testimonies, regarding the stated provisions and regulations as well as the building codes to show the standard of care applicable to Dyvex and to offer evidence showing that Dyvex breached that standard of care. Thus, the question is whether Dyvex, in this product liability case claiming that Agilex's PPG product was defective and caused the fire destroying its building, owed a duty to Agilex to comply with all OSHA regulations, ANSI standards and BOCA codes.

At the outset, it is clear that Agilex has the burden to prove its affirmative defenses. *See* Bender v. Norfolk Southern Corp., 994 F.Supp.2d 593, 610 (M.D.Pa. 2014) ("Defendant carries the burden of proving its affirmative defense.").

The court now considers whether Dyvex owes Agilex a duty of care. "A

13

duty may arise from common law, statute, or contract." Morello v. Kenco Toyota Lift, 142 F.Supp.3d 378, 382 (E.D. Pa. 2015) (citations omitted). "It is well-settled that OSHA does not create a private right of action." Stephens v. High Voltage Maintenance Co., 323 F.Supp.2d 650, 653 (E.D.Pa. 2004) (citing Ries v. Nat'l R.R. Passenger Corp., 960 F.2d 1156, 1164 (3d Cir. 1992)). As discussed below, the court finds that Agilex fails to show a legal basis for its contention that the stated provisions, regulations and codes, which may be applicable to Dyvex regarding its relationship with its employees, somehow imposed a duty of care which Dyvex owed to Agilex.

"Under Pennsylvania law, a jury may not consider evidence of industry standards or regulations [such as OSHA regulations] to show the alleged reasonableness of a manufacturer's conduct in its design choice or the alleged absence of a product defect." Sweitzer v. Oxmaster, Inc., 2010 WL 5257226, *11 (E.D.Pa. Dec. 23, 2010) (citing Lewis v. Coffing Hoist Div., 515 Pa. 334, 528 A.2d 590, 594 (Pa. 1987)). Thus, Agilex could not introduce evidence that it complied with OSHA regulations with respect to its formulation of its PPG to show that its PPG was not in a defective condition when it was shipped to Dyvex. Further, while Pennsylvania courts have held that "evidence of OSHA regulations is admissible as a standard of care, the violation of which is evidence of negligence", Wood v. Smith, 495 A.2d 601, 603 (Pa. Super. Ct. 1985), such evidence is generally used by a plaintiff employee to show that a defendant employer owed him a duty of care and

14

how that duty was violated. However, the *Wood* case is distinguishable from the present case since in *Wood* plaintiff was suing the contractor who constructed the scaffolding from which the plaintiff's decedent fell and alleged that it was negligently constructed. Thus, in *Wood*, the defendant contractor clearly owed a duty to decedent to properly construct the scaffolding. Since the contractor owed a duty to plaintiff's decedent, the court found that the OSHA regulations were admissible to show the standard of care that the contractor owed decedent.

Dyvex states that, "the case law limits OSHA's application to cases involving an employer and employee relationship." Dyvex also states that Agilex is improperly trying to use OSHA as "a private right of defense to [its] property damage claims." In our case, there was no employee-employer relationship between Dyvex and Agilex, and, as discussed below, the court finds that Dyvex did not owe Agilex a duty of care.

Dyvex states that in Pennsylvania, "OSHA cannot be used to establish the standard of care owed by a defendant to an injured worker unless and until the worker first establishes that the defendant owes him a duty." Dyvex cites to Nertavich v. PPL Elec. Utilities, 100 A.3d 221, (Pa.Super. 2014), *affirmed*, 633 Pa. 201, 124 A.3d 734 (Oct. 27, 2015), for support. In *Nertavich*, an employee of an independent contractor which was hired to paint PPL's poles fell off one of the poles and was injured. He then sued PPL. At trial, the plaintiff in *Nertavich* "argued the jury could have found PPL directly liable

based upon its alleged violations of OSHA and NESC." The trial court found that plaintiff's expert witnesses could testify that based on industry practice, including OSHA, "PPL breached its duties[,] and this evidence of PPL's direct negligence was admissible to prove PPL breached a duty owed to [plaintiff]." Id. at 243. The Superior Court stated that "[w]hile we agree that testimony concerning industry standards and regulations may be admissible to determine the standard of care in a particular case, we conclude that, here, the experts improperly opined on the primary question as to whether or not PPL owed a duty to [plaintiff]." Id. The court then noted that "[i]t is well-established that the existence of a duty is a question of law for the court to decide." Id. (citation omitted).

"Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff." Morello, 142 F.Supp.3d at 382 (citations omitted). No doubt that in Pennsylvania, "[t]he initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff", R.W. v. Manzek, 585 Pa. 335, 346, 888 A.2d 740 (2005), and that "[t]he existence of a duty is a question of law for the court to decide." Id. *See also* Hoffman v. Paper Converting Machine Co., 694 F.Supp.2d 359, 368 (E.D. Pa. 2010) ("[T]he first step in an analyzing a negligence action is the determination of whether a defendant has a duty to the plaintiff, and the question of whether

a defendant owes a plaintiff a duty of care is a question of law to be answered by the court.") (citation omitted). Agilex fails to address this initial question as to whether Dyvex owed it a duty of care. Nor does Agilex cite to a specific case imposing a duty on a plaintiff company such as Dyvex raising strict liability and negligence claims against a defendant company alleging that it supplied a product in a defective condition. Rather, Agilex jumps to the question of what standard of care Dyvex owed to it and what evidence it can introduce to show that Dyvex violated the applicable standard of care.

"In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another." Manzek, 585 Pa. 346. It appears that Agilex is seeking the court to impose a duty of care on Dyvex based on the OSHA regulations, building codes and industry fire standards as well as the Rust's deposition testimony and expert report.  Agilex does not discuss the first issue of whether Dyvex owed it a duty of care, and instead focuses on whether Dyvex breached its duty and what evidence it can introduce to show that breach. In fact, Agilex indicates that it seeks to use the OSHA regulations as evidence of the standard of care Dyvex owed to it. "Although industry standards are admissible evidence in negligence cases, they do not have bearing on the issue of whether a duty was owed; rather, industry standards are admissible on the issue of the standard of care." Morello v. Kenco Toyota Lift, 2015 WL 1400582, *3 (E.D.Pa. Mar. 26, 2015) (citing Norton v. Ry. Exp. Agency, Inc., 412 F.2d 112,

114 (3d Cir. 1969)). "Industry standards cannot be used to create a duty when none would otherwise be owed." Id. In fact, the cases to which Agilex cites did not address the issue of whether Dyvex owed it a duty of care, rather, they address situations in which the defendant was found to have owed a duty of care to the plaintiff and whether the defendant breached its duty. In these cases, the courts allowed the use OSHA regulations and industry standards to show the standards applicable to the defendant that owed a duty of care and, to show what standards were violated by the defendant as evidence that defendant breached its duty of care. In this case, Dyvex argues that it does not owe a duty of care to Agilex and thus, any evidence regarding the OSHA regulations, building codes and industry fire standards should not be admitted.

The court finds as a matter of law that Dyvex did not owe Agilex a legally cognizable duty of care. Agilex does not cite to any case in which a plaintiff company, such as Dyvex, was found to owe a defendant company, who only supplied an alleged defective product (i.e., fragrant oil) used by plaintiff in its manufacturing process, a duty of care to comply with OSHA regulations, building codes and industry fire standards. Nor has the court found any such authority under Pennsylvania law to impose such a duty on a plaintiff company like Dyvex. Thus, the court will not impose such a duty of care on Dyvex. *See* Morello, 142 F.Supp.3d at 384-85.

Agilex also relies on Rolick v. Collins Pine Company, 975 F.2d 1009 (3d

Cir. 1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1417 (1993), in support of its contention that it should be allowed to offer evidence, including expert testimony, that Dyvex did not comply with OSHA regulations and ANSI standards. The Third Circuit first found in Rolick, 975 F.2d at 1011, that "it [was] clear that plaintiff, an independent contractor and business invitee, came within the general category of persons to whom defendants might owe a duty of care under Pennsylvania law." The court in Rolick, id. at 1014, then stated that "[w]e can think of no reason under the Federal Rules of Evidence why the OSHA regulation is not relevant evidence of the standard of care once it is determined, as we have done, that under Pennsylvania law the defendants could owe plaintiff a duty of care."

The court finds that Agilex's reliance on *Rolick* is misplaced, since the court in *Rolick* had already initially determined that the defendants could owe the plaintiff a duty of care. As the Superior Court explained in Nertavich, 100 A.3d at 243, "the Third Circuit [in *Rolick*] concluded evidence of the violation of an OSHA regulation was relevant to the issue of the standard of care, only after the court first determined that the defendant[s] owed a duty of care to the plaintiff." The determinative element in this case is the first question as to whether Dyvex owed Agilex a duty of care. The court finds that the *Rolick* case is inapposite to the present case because this court has found that Dyvex owed no duty of care to Agilex. The court in Nertavich, 100 A.3d at 244, thus "conclude[d] that [since] PPL owed no duty to [plaintiff], the

19

employee of an independent contractor, it would have been improper for the jury to consider evidence concerning PPL's purported violations of industry standards." Similarly, in this case the court finds that it would be improper for the jury to consider evidence regarding Dyvex's alleged violations of the stated regulations and standards since Dyvex did not owe any duty to Agilex.

Based on *Nertavich*, Dyvex contends that Agilex should not be permitted to offer any evidence, including expert opinions, regarding the initial question as to whether Dyvex owed a duty to Agilex, and that any evidence that Dyvex violated OSHA and the other stated regulations and standards is not admissible since that only goes to show the second question as to what the standard of care was, assuming that Dyvex owed a duty of care to Agilex. As stated, the court finds that Dyvex did not owe a duty of care to Agilex in this case and, thus any evidence that Dyvex violated OSHA and the other stated safety regulations and standards will not be permitted.

As such, Agilex will be precluded from relying upon all of the stated provisions and regulations as evidence of any standard of care Dyvex allegedly owed to it. Therefore, Dyvex's motion for partial summary judgment will be granted to the extent that Agilex will be precluded from introducing evidence of Dyvex's alleged violations of all of the above stated provisions and regulations at trial.

Next, Dyvex moves to preclude Agilex from offering evidence at trial that it failed to comply with building code requirements, including a lack of a

sprinkler system, to try and show that its fire damages were preventable or would have been greatly reduced if Dyvex complied with building codes. Dyvex points out that the evidence does not show its building was improperly built 15 years ago, and that "there is no evidence that any code enforcement official ever cited Dyvex for violating any applicable code." Dyvex states that it received a Certificate of Occupancy when its building was completed and that it abided by all legal requirements and received all necessary approvals to commence its operations in its building. Dyvex then states that it operated its business, including business with Agilex, over many years without ever once receiving a code violation by a local enforcement officer or by any governmental authority. Dyvex also states that Agilex seeks to impose code requirements on its, such as the sprinkler system, that were not in effect when it constructed its building.

Dyvex states that Agilex is attempting to offer evidence of alleged code violations, but there is no evidence from any governmental agencies which were responsible for code enforcement showing that Dyvex improperly built its building or violated any code provisions at any time, either before the fire or thereafter. In fact, as Dyvex states, "the record evidence establishes that Dyvex followed the law and received all necessary [code compliance and building occupancy permit] approvals." In particular, Dyvex was never cited for violating any code provisions for failing to have a sprinkler system and it was given an occupancy permit after its building was complete without such

21

a system. Also, Dyvex points out, with respect to both the code violation evidence and the alleged OHSA violations, that if Agilex were allowed to introduce such evidence at trial, it would be deprived of the requisite administrative due process rights afforded to an entity cited for any code or OSHA violations, essentially allowing Agilex's experts, including Long and Rust, to usurp the duties of the governmental agencies and to decide on their own that Dyvex was guilty of the violations.

Dyvex states that Agilex must take its building as it was since the evidence shows its building received all necessary approvals to begin its operations and it was never cited for violating any code requirements over the many years it was in business. Dyvex contends that Agilex cannot hold it responsible to comply with code requirements, namely, two Codes adopted with the Uniform Construction Code, the 2009 International Building Code ("IBC") and the 2009 International Fire Code ("IFC"), enacted years after Dyvex's building was complete, i.e., 1998, especially when Dyvex was not cited by any governmental authority or fire code official for failing to conform to the new requirements or for not being compliant with any requirements that were applicable to Dyvex's building. Thus, Dyvex states that, "Agilex cannot argue that it should be less liable because Dyvex's building lacked a sprinkler system or other features that could conceivably have reduced the extent of the fire damage."

The court concurs with Dyvex that Agilex cannot establish standing to

invoke violations of building codes since it has determined that Dyvex did not owe a duty to Agilex. Dyvex states that "Agilex fails to cite a single precedent where a party situated similarly to it has been permitted to pursue a claim of a building code violation as an affirmative defense." Moreover, the code provisions are intended to protect persons who occupy the buildings and not a company such as Agilex which was doing business with Dyvex paid Dyvex to compound its PPG product to make fragrant plastic pellets. (*See* Doc. 95 at 19).

The court also finds that the introduction of evidence by Agilex that Dyvex's building lacked safety features and did not meet the requirements of the codes could confuse the jury's determination of one of the key issues in this case, namely, whether Agilex's PPG product was safe for its intended use, and that if such evidence were allowed, the jury may find that Agilex's product was not defective based on evidence that Dyvex's building allegedly lacked the safety features.

Therefore, Dyvex's motion for partial summary judgment will also be granted to the extent that Agilex will be precluded from introducing evidence of Dyvex's alleged building code and fire code violations at trial. Agilex will not be permitted to introduce evidence regarding the lack of a sprinkler system and other safety features prior to the fire. *See* Estate of Hicks v. Dana Companies, LLC, 984 A.2d 943 (Pa. Super. 2009) (Superior Court of Pennsylvania held that defendant company, in a case plaintiff raised a strict

liability claim, could not admit OSHA standards and other industry safety standards and building codes to disprove causation finding that "this argument [was] a backdoor attempt to have the OSHA standards admitted to disprove defect" which is not admissible in a strict liability case. The court thus precluded the introduction of OSHA standards by defendant company for the purpose of establishing the absence of a product defect.).

As its third basis for its partial summary judgment motion, Dyvex argues that Agilex cannot intervene in the contractual relationship between an insured and its insurer, namely, Dyvex and Nationwide. Agilex seeks to raise a defense to Dyvex's claims showing that Nationwide owed Dyvex certain duties and breached them, including: (1) a duty to ensure that Dyvex formulated, adopted, and implemented safety policies and training programs; and (2) a duty to verify that Dyvex complied with OSHA regulations. Dyvex raises the following contentions: there is no breach of insurance contract claim in this case; Nationwide is not a party in this case; and Agilex has not moved to join Nationwide as a party. Dyvex also states that Agilex did not raise a claim that it was an intended third-party beneficiary of the insurance contract between Dyvex and Nationwide. As such, Dyvex states that Agilex should not be allowed to assert any defense in which it claims certain benefits or duties were owed to it based on the contractual relationship between Dyvex and Nationwide.

Agilex states that discovery showed the following:

Nationwide's insurance agent, Donna Depoti, the wife of Dyvex owner Joseph Depoti, had co-signed for loans made to Dyvex by CB&T Bank. Under the terms of those loans, she was responsible for repaying those loans, which gave her, and her principle Nationwide, an ownership interest or *de facto* ownership interest in the company. They had a vested interest and incentive for the company to keep its costs down and perform well enough to repay the loans without penalty. This relationship between Dyvex, Nationwide and its agent Donna Depoti was in direct violation of Dyvex's own policies and procedures regarding conflict of interest.

Agilex states that it is not interested in the contractual relationship between Dyvex and Nationwide, rather it is seeking to show that "Dyvex and Nationwide are both owners or *de facto* owners acting in concert as one with vested business interests that are aligned." Agilex states that based on "Nationwide's intertwined and close relationship with Dyvex, its failure to point out OSHA Fire Protection standards to Dyvex is partially to blame for putting them in unnecessary risk."

Thus, Agilex states that "both Dyvex and Nationwide's, as subrogee, party in interest, and as *de facto* owner of Dyvex, actions and/or inactions are critical to [its] separate Affirmative Defenses, including their comparative negligence, pled by [Agilex]."

Dyvex argues that the court should dismiss Agilex's insurance-policy-based defenses for failure to plead. Further, Dyvex points out that Agilex has not cited to any legal authority for its stated contentions seeking to lay blame with Nationwide, in addition to Dyvex, for failing to require Dyvex to comply with safety and fire standards. Dyvex also argues

that "Pennsylvania law limits standing to bring actions on a contract to the parties" and that "[t]hird parties may sue on a contract only if they are 'intended' beneficiaries of the contract under §302 of the Restatement (Second) of Contracts." Dyvex then states that Agilex has failed to show that Dyvex and Nationwide intended to confer any benefits on Agilex when they entered into their insurance contract.

"Traditionally, [under Pennsylvania law] a person or entity did not become liable for a breach of contract when that person or entity was not a stated party to the contract." Zeno v. Ford Motor Co., Inc. 480 F.Supp.2d 825, 841-42 (W.D.Pa. 2007) (citations omitted). "When there has been no direct transaction between the plaintiff and the defendant, it is usually expressed by saying that they are not in 'privity' of contract. Privity of contract exists when there is a connection or relationship which exists between two or more contracting parties." *Id.* Thus, "[f]or parties to be considered to be in privity, a contractual relationship must exist between them." *Id.* (quoting Phillips v. Cricket Lighters, 576 Pa. 644, 841 A.2d 1000, 1006 (2003)); *see also* Deynzer v. Columbia Gas of Pennsylvania, Inc., 875 A.2d 298, 301 (Pa.Super.Ct. 2005) ("[P]rivity of contract is personal privity, and is confined to the persons of the contracting parties.").

There is no doubt that the insurance contract at issue does not list Agilex. Thus, Dyvex states that Agilex cannot rely upon the insurance contract to raise any defenses to its claims due to the lack of privity. *See* Dunkin

Donuts Franchised Restaurants, LLC v. Claudia I, LLC, 2013 WL 3716525, *3 (E.D.Pa. July 15, 2013) ("In general, a person must be in privity of contract to sue for damages for breach of such contract."). Dyvex also states that Agilex was not an intended third-party beneficiary to the insurance contract.

"[U]nder certain conditions a person may sue as a third party beneficiary to a contract. *Id*. (citing Visor Builders, Inc. v. Devon E. Tranter, Inc., 470 F. Supp. 911, 923 (M.D.Pa. 1978) (noting that a third-party beneficiary is "one who, although not a party to the contract, and hence, not in privity with the promisor ... is permitted to enforce the contract between the promisor and the promisee for its (the third-party beneficiary's) benefit")).

"The Pennsylvania Supreme Court has adopted the Restatement (Second) of Contracts §302 which allows for third-party intended beneficiaries to sue for breach of contract 'even though the actual parties to the contract did not express an intent to benefit the third party.'" Shumate v. Twin Tier Hospitality, LLC, 655 F.Supp.2d 521, 535 (M.D.Pa. 2009) (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 168 (3d Cir. 2008). Pursuant to §302 of the Restatement (Second) of Contract:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an

intended beneficiary.

*Id*. (quoting Restatement (Second) of Contracts §302).

The court in *Shumate* stated that the following two part test must be satisfied:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Id*. (citations omitted).

"The first element of the test establishes 'a standing requirement which leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate,' and the second element 'defines the two types of claimants who may be intended as third party beneficiaries.'" *Id*. (citations omitted). "The first question establishes whether an individual is a third-party beneficiary and is a question of law for the court's determination." *Id*. (citation omitted). The second question draws a distinction "between intended third-party beneficiaries, who have rights under section 302, and incidental third-party beneficiaries, who do not have rights under section 302." *Id*. (citation omitted).

Section 302 requires that the contracting parties express an intent to benefit the third party in the contract itself and, in this case there no evidence presented showing any intent by Dyvex and Nationwide to benefit Agilex or any third-party in the contract. Under Pennsylvania law, "[i]n order for a third

28

party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." Burks v. Federal Ins. Co., 883 A.2d 1086, 1087–88 (Pa.Super.Ct. 2005) (citation omitted).

The court finds that Agilex is not a third-party beneficiary of the insurance contract between Dyvex and Nationwide, and that Agilex has no standing to raise any defense showing that either Nationwide or Dyvex owed it any duties under the contract and breached them. Since Agilex was not an intended third-party beneficiary and had no rights under the contract, it cannot assert any defense based on the contract. Nor does Agilex have standing to assert defenses to Dyvex's claims based on the alleged failure of Nationwide to point out Dyvex's non-compliance with OSHA standards and building code requirements as well as fire safety requirements.

Therefore, Dyvex's motion for partial summary judgment will also be granted to the extent that Agilex will be precluded from raising any defenses based on the insurance policy between Dyvex and Nationwide.

In short, the court finds that Dyvex owed no duty to Agilex to make its building more fire resistant and more compliant with OSHA, with state or local building codes, and with safety recommendations made by Nationwide. Agilex will be precluded from offering any evidence to show that Dyvex's compliance with those standards, codes and regulations would have prevented the fire at

its building or reduced Dyvex's property damage, including Rust's opinions that if Dyvex had operated its business in compliance with OSHA regulations, Dyvex's loss would have been avoided or greatly reduced. Therefore, Dyvex's motion for partial summary judgment, (Doc. 93), will be **GRANTED IN ITS ENTIRETY**.

## III. CONCLUSION

Accordingly, the court will **GRANT IN ITS ENTIRETY** Dyvex's motion for partial summary judgment, (Doc. 93), and will preclude Agilex from raising any defenses based on the following: (1) OSHA regulations and all of the other above stated safety standards; (2) building and fire codes; and (3) the insurance contract, as well as any relationship, between Dyvex and Nationwide.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 28, 2018**