**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DYVEX INDUSTRIES, INC.,** | : | |
| Plaintiff, | : | Civil No. 12-CV-0979 |
| v. | : | (JUDGE MANNION) |
| **AGILEX FLAVORS & FRAGRANCES, INC., et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

Pending before the court is Dyvex's motion to completely preclude one of Agilex's expert witnesses, Wendell D. Rust, of OSHA Safety Expert, Inc., from testifying at trial, including rendering any opinions regarding the alleged duties and standards of care Dyvex owed to Agilex. (Doc. 94). This is a product liability case in which Dyvex alleges that Agilex's defective Perfectly Pomegranate Gras Oil ("PPG") polymer fragrance oil caused a fire while it was being processed and destroyed its facility. On February 28, 2018, the court granted Dyvex's motion for partial summary judgment and found that Dyvex did not owe Agilex a duty of care to comply with Occupational Safety and Health Administration ("OSHA") regulations and with any other industry safety standards, that Agilex could not assert violations of the building and fire codes by Dyvex as defenses to its claims, and that Agilex could not assert any defense based on the contractual relationship between Dyvex and its insurer Nationwide. (Docs. 156 & 157). Based upon the court's Doc. 156 Memorandum and upon review of the instant motion and related materials,

the court will **GRANT IN PART** and **DENY IN PART** Dyvex's motion to preclude Rust from testifying at trial.

I. **BACKGROUND**[1]

The remaining claims raised by Dyvex in its complaint, (Doc. 1), against Agilex are for negligence, breach of contract, breach of warrant, and strict liability.[2] Agilex formulates fragrance oils that are used in products such as air fresheners and personal care products. Agilex supplied fragrance oil to Dyvex for use in Dyvex's polymer fragrance concentrate products. Specifically, Dyvex used a Buss-Kneader machine which "compounds two raw materials - unscented polymer plastic pellets and a fragrance oil - into fragrant plastic pellets." After Dyvex compounded the plastic pellets with the fragrance oil, it would send the resulting fragrant plastic pellets to Agilex for use in various products. Agilex in turn would pay Dyvex for the compounding process and for the polymer. Dyvex alleges that Agilex supplied the fragrance oil that was being processed at the time of the fire. Dyvex basically claims that Agilex's PPG fragrance oil was defective and created an unreasonable risk of fire, and that the June 3, 2010 fire at its facility was caused by Agilex's PPG

---

[1]Since the court stated the background of this case in its February 12 and 28, 2018 Memoranda, it shall not fully repeat it herein. (Docs. 152 & 156).

[2]Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003).

that was being processed at the time. Dyvex also alleges that the PPG was unsafe and unsuitable for use in its Buss-Kneader machine, and that Agilex failed to warn it of PPG's dangers, including its 93 degree flash point.

On, March 31, 2017, Dyvex filed its motion to completely preclude Rust, Agilex's main expert on OSHA and safety regulation defenses, from testifying, (Doc. 94), and simultaneously filed its brief in support of its motion, (Doc. 97). After an extension of time, Agilex filed its brief in opposition on June 26, 2017, (Doc. 146), and a statement of material facts regarding its response to Dyvex's motion, (Doc. 147).[3] Dyvex then filed its reply brief on July 7, 2017. (Doc. 150).

## II.    STANDARD OF REVIEW

Dyvex's instant motion seeks, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially

---

[3]The court does not consider Agilex's statement of material facts, (Doc. 147), since Dyvex's instant motion, (Doc. 94), is not one for summary judgment. *See* Local Rule 56.1, M.D. Pa. Rather, Dyvex's motion is basically a motion *in limine* to preclude Rust's testimony at trial. Agilex's exhibits will be considered to the extent they are relevant to the remaining issues related to Dyvex's Doc. 94 motion.

3

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

The admissibility of expert testimony is governed by under FRE 702, which requires an expert witness to have "specialized knowledge" regarding the area of testimony. The Third Circuit has explained, "[t]he basis of this specialized knowledge can be practical experience as well as academic training and credentials," and "[w]e have interpreted the specialized knowledge requirement liberally." Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 327-28 (3d Cir. 2002) (internal citations omitted). The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Id. Moreover, Rule 702 "has a liberal policy of admissibility." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997) .

When faced with a proffer of expert testimony, the court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. The *Daubert* Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id., at 597. The test of reliability is "flexible," and *Daubert*'s list of specific factors - testing, peer review, error rates, and "acceptability" in the

4

relevant scientific community - neither necessarily nor exclusively applies to all experts or in every case. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

In performing its gatekeeping function to determine whether an expert's report is relevant and reliable under *Daubert* and Rule 702, "the court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. . . . Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert are within the sole province of the jury." Walker v. Gordon, 46 F. App'x 691, 695 (3d Cir. 2002) (citing Breidor v. Sears, Roebuck & Co., 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

### III. DISCUSSION

Initially, by way of background, Dyvex's partial summary judgment motion was granted and the court basically precluded Agilex from asserting any of its defenses to Dyvex's claims which rely upon industry safety rules and regulations found in OSHA and in various other safety provisions and building codes, such as ANSI and BOCA. (Docs. 156 & 157).

In its present motion, Dyvex seeks to preclude Rust from testifying for Agilex at trial pertaining to its defenses based, in part, on alleged duties which

5

Dyvex owed to Agilex. Dyvex seeks to preclude Rust from testifying as to his opinions regarding Dyvex's non-compliance with OSHA, American National Standards Institute ("ANSI") and BOCA standards, as well as other safety regulations, based on lack of qualifications, foundation, fit and relevance. Agilex argues that if Dyvex had complied with OSHA and building code requirements along with other safety standards, such as a sprinkler system, it would have prevented the fire at its building or reduced Dyvex's property damage allegedly caused by Agilex's PPG.[4]

Agilex has been precluded from offering evidence at trial regarding its affirmative defenses to the extent it showed that Dyvex's conduct in failing to adhere to the industry safety standards and building codes either caused the fire or greatly increased its damages. The court has found that Dyvex owed no duty of care to Agilex to comply with OSHA and the other industry safety standards, with state or local building codes, and with any recommendations made by Nationwide. The court found that the issue of whether Dyvex owed a duty to Agilex was a legal issue for the court to decide and the court found that Dyvex did not owe Agilex a duty of care. *See* Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1366 (3d Cir. 1993) (Third Circuit held that in Pennsylvania the issue of whether a defendant owes a duty of care to a

---

[4]Agilex raised numerous affirmative defenses in its answer to Dyvex's complaint, and several are based upon Dyvex's alleged "comparative fault, failure to comply with various laws, codes and regulations, failure to act with ordinary and reasonable care, [and] failure to mitigate its damages."

plaintiff is a question of law.). In short, the court found that in a product liability case such as the present one, the issue is whether there was a defect in Agilex's PPG, and that the product is on trial, and not conduct of Dyvex.

There is no evidence that Dyvex was actually found to have violated any OSHA regulations by OSHA itself. Rather, Agilex relies upon the expert report of Rust and his deposition testimony to support its contention that Dyvex was not in compliance with several OSHA provisions and regulations as well as other industry safety standards and building codes. Since the court has granted Dyvex's partial summary judgment motion and precluded Agilex from asserting any of its defenses to Dyvex's claims based on the stated alleged safety violations and based on any conduct of Dyvex in terms of its compliance with safety provisions and standards, it will also grant Dyvex's motion to preclude Rust from testifying regarding any and all of his opinions pertaining to Dyvex's non-compliance with OSHA and industry safety standards as well as building codes. Nor will Rust be permitted to testify regarding any aspect of Dyvex's relationship with Nationwide. Rust will also be precluded from rendering his opinions at trial that Dyvex violated the stated safety provisions, regulations and codes and, from rendering his opinions that Dyvex's violations lead to the fire and greatly increased the amount of fire damage in Dyvex's building.[5]

---

[5]Rust opines, in part, that if Dyvex had operated its business in compliance with the OSHA fire standards, Dyvex's fire loss could have been avoided or reduced.

As such, Rust will be precluded from opining that "dangerous work procedures and unsafe work practices at the Dyvex facility lead to this fire and contributed to the needless destruction of [its] facility." Nor will Rust be permitted to opine that if Dyvex had the proper fire safety prevention standards in place as required by the stated provisions and codes, it would have been able to put out the fire and minimize any damages to its building.

The court now turns to the other opinions of Rust which Dyvex also seeks to preclude from being presented at trial based on his lack of qualifications, reliable methodology, factual basis and fit. Rust issued an expert report on March 27, 2015. (Doc. 97, Ex. A, Doc. 146, Ex. C). Rust was deposed on June 10, 2016 and on December 22, 2016. (Doc. 97, Ex. B, Doc. 146, Exs. D & E). The relevant opinions of Rust are summarized in Dyvex's brief and in Agilex's brief in opposition, and shall not be repeated herein.

Dyvex states that Rust's expertise is as a safety inspector. Dyvex contends that Rust has never inspected or consulted at a plastic compounding company like the Dyvex facility, and that "he offers no support for his claim to have specialized knowledge regarding compounding, fire investigation, evidence preservation, insurance, kneaders, customer retention, financial considerations for whether to rebuild, the re-usability of building components, and many other subjects on which he offers opinions."

Specifically, Dyvex states that Rust rendered opinions on several subjects, including the following:

8

1. Dyvex's compliance with OSHA and other workplace safety standards
2. Fire Suppression-Need for and Comparative Effectiveness of Extinguishers, Large and Small, and of Sprinkler Systems
3. Insurance Underwriting and Inspections
4. Airflow in the Building Induced by Exhaust Fans and Other Circumstances
5. The Fact Question of Which Fragrance Oil Dyvex was Processing at the time of the Fire
6. The Fact Question of What, If Anything, Leaked from the Buss Kneader
7. Static Electricity
8. Spoliation of Evidence
9. Dyvex's Use and Maintenance of the Buss Kneader
10. Whether or Not It Made Good Business Sense for Dyvex to Rebuild its Building
11. Whether Dyvex Could Have Kept or Regained its Customers

With respect to issues numbers 1, 2 and 3, Rust will be precluded from giving any testimony pertaining to these issues to the extent that his testimony is addressed in Dyvex's motion for partial summary judgment which the court has granted, such as any testimony regarding standards under OSHA, ANSI, BOCA, IBC, and ICC, and regarding the alleged failure of Nationwide to advise Dyvex that it was not compliant with these standards. Thus, Rust will not be permitted to testify regarding Dyvex's non-compliance with OSHA and the stated other workplace safety standards since Dyvex did not owe a duty of care to Agilex. Further, Rust will not be allowed to testify about the lack of fire suppression devices, the need for larger fire extinguishers, and the lack of a sprinkler system in the Dyvex building. Rust will not be permitted to render his opinions as to how these lack fire suppression devices and

systems caused greater damages in Dyvex's building.

Also, since the court has issued a separate Memorandum granting, in part, Agilex's motion with respect to the spoliation issue, Rust will be allowed to testify on this issue, number 8. above, insofar as his testimony is consistent with the court's Memorandum. (Doc. 154).

Thus, remaining are issues numbers 4, 5, 6, 7, 9, 10, and 11.

The court considers Federal Rules of Evidence 702 and 703 with respect to Dyvex's present motion.

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> (d) the expert has reliably applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Third Circuit stated in Walker v. Gordon, 46 Fed.Appx. 691, 694 (3d

Cir. 2002), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." (citing *Kumho Tire, 526 U.S. at 152-53*." The *Walker* Court also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" Id. (citing *Daubert, 509 U.S. at 592, 113 S.Ct. 2786*). "These gatekeeping requirements have been extended to apply to all expert testimony." Id. (citing *Kumho Tire, 526 U.S. at 147*.).

> Further, the Court in Walker, 46 Fed.Appx. at 694, stated:
>
> In accordance with *Daubert*, trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting *Daubert, 509 U.S. at 590*). In other words, the expert must have "good grounds" for his belief. *Id.* at 741-42 (explaining how Rule 702, which governs the use of expert testimony in the federal courts, embodies three distinct substantive restraints on the admission of expert testimony: qualifications, reliability and fit).

The Court in *Walker* provided guidance on the role of the trial court with respect to its gatekeeping requirements. The Court in *Walker, 46 Fed.Appx. at 695*, explained:

> In performing its gatekeeping function and, in particular, in deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the

11

conclusions reached therein. To the contrary, the role of the District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). [FN7] Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury. *Cf. Breidor v. Sears, Roebuck and Co.,* 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

An expert need only have "good" grounds for his opinion. The basis might be imperfect to such a degree that the court would find there is some different conclusion that has stronger evidentiary support, but that does not justify exclusion. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994).

Agilex states that based on Rust's experience, he "is qualified to state that dangerous work procedures and unsafe work practices at the Dyvex facility lead to this fire and the needless destruction of the facility in this case, especially given the liberal standard for the qualification of experts." Agilex states that Rust is well qualified to testify as to his opinions regarding the cause and origin of the fire at the Dyvex building, including the trenches cut into the building's floor as well as the floor drains, the ventilation system, the dust suction system, based on his following credentials:

> In the past 40 years, [Rust] has been a safety consultant with a focus on construction supervision, an IOSH inspector, an OSHA inspector (in which capacity he inspected over 322 job sites), an OSHA training instructor, an industrial trainer, a contractor in all phases of construction, from design and management through building and completion, a small business owner, and a safety professional.

The court finds that Rust cannot testify with respect to any of his opinions regarding issues numbers 4 and 7 above, since these opinions are based on the alleged violations of the safety standards and building codes which he opines Dyvex violated, including his opinions about potential sources of static electricity and inadequate ventilation, which the court has already precluded.

Regarding issue number 5, there is conflicting evidence as to what Dyvex was processing at the time of the fire and exactly where the opened 55 gallon drum of Agilex's PPG was located at the time of the fire. Agilex contends that an unknown liquid was being processed in the kneader machine at the time of the fire. Dyvex claims that PPG was definitely being processed. This is certainly a disputed material fact for the jury to resolve. Experts can provide an opinion about the ultimate issue in a case, but may not give an opinion tied to any legal conclusion, such as whether a defendant was negligent or whether a defendant owed a duty to the plaintiff. Patrick v. Moorman, 536 Fed. App'x 255, 258 (3d Cir. 2013)(citing Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006); United States v. Leo, 941 F.2d 181, 196–97 (3d Cir. 1991)). The existence of conflicting evidence is not

a basis to exclude an expert's testimony. ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 290 (3d Cir. 2012). The respective credibility of Dyvex's witnesses and Agilex's witnesses and experts is a question for the jury to decide. Id. (citation omitted). Also, there must be a sufficient factual basis at trial regarding any expert testimony with respect to the location of the opened drum of PPG since an expert's opinion must be supported by sufficient facts. Id.

Thus, Rust will be allowed to testify regarding his opinion as to what Dyvex was processing at the time of the fire and where the opened 55 gallon drum of Agilex's PPG was located. Dyvex can cross-examine him with its evidence that PPG was being processed at the time.

Dyvex also maintains that Rust is not qualified to give opinions as to the cause and origin of the fire and, that he cannot prove that unmixed oil leaked during the compounding process in the kneader machine and, that vapor was emitted and overcame the ventilation and collected in sufficient quantities to be ignited. Based on the rationale stated above, Rust will be allowed to testify regarding the issue of what leaked from the Buss kneader machine at the time of the fire, issue 6. Specifically, Rust will be allowed to give his opinion that oil leaked from the kneader at the time of the fire. He cannot testify with respect to any opinion that Dyvex's ventilation system and the trenches in its floor were not in compliance with OSHA standards or with any other regulations and codes. Dyvex can cross-examine him based on the testimony

of its employees that the kneader machine never leaked oil, rather it leaked a mixture of oil and molten polymer they called "extrudate."

Issue 9 pertains to Dyvex's use and maintenance of the Buss kneader machine. Dyvex's case is based, in part, on its claim that Agilex's PPG was in a defective condition with its too-low flash point and that this sparked a fire inside or near the kneader machine. Dyvex alleges that at the time of the fire, PPG was being processed. Dyvex states that "[h]eating takes place in the kneader, but the material heated inside is not the oil alone - it is the mixture of oil and molten plastic." Dyvex also notes that "the internal temperature for its compounding process is between 250 and 275° F" and that "[t]he oil spends only 90 seconds inside the [kneader] machine being combined with the polymer."

Rust will be allowed to offer his opinions as to the manner of Dyvex's use of the kneader machine at the time of the fire but he cannot give any opinion as to whether the machine was maintained properly since that is beyond his expertise and such opinion is based on industry safety standards and regulations. Dyvex will be able to cross-examine Rust as to his knowledge of the process Dyvex was running at the time of the fire and of the manner in which the kneader machine was being used and operated.

Dyvex also argues that Rust is not qualified to offer his opinion that Dyvex did not follow the Buss Manual due to his lack of knowledge, education or experience with kneader machines. No doubt that an expert witness must

15

possess specialized expertise to be qualified to testify about an issue. *See* Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). However, the Third Circuit has "interpreted Rule 702's qualification requirement liberally" and "[it has] held that a 'broad range of knowledge, skills, and training qualify an expert.'" Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). As such, Rust will be permitted to give his opinion that Dyvex failed to follow the Buss Manual without referencing any "recognizable" or "special" hazard under OSHA or under any regulations, and Dyvex can cross-examine him regarding his alleged lack of specific knowledge of the machine.

Additionally, the court considers issues 10 and 11, i.e, Rust's opinions regarding whether or not it made good business sense for Dyvex to rebuild its building, and whether Dyvex could have kept or regained its customers. Dyvex argues that Rust should be precluded from opining that "[t]he failure of Dyvex (1) to rebuild, and (2) to keep their customer base was not the fault of Agilex." Dyvex states that this is a legal conclusion Rust is not qualified to offer. Dyvex also states that Rust's opinions that Dyvex could have regained its customers and rebuilt its building should be precluded based on his lack of business expertise. Dyvex states that Rust makes "unsupported assumptions and predictions about the business climate, the level of effort put forth by Dyvex's principals to recover from the fire, their psychological attitude toward the business [ ], the ability to re-attract lost customers, and the

financing options available to Dyvex." Dyvex states that Rust admitted that he did not know what Dyvex did after the fire to try and remain in business and retain its customers. Further, Dyvex states that Rust indicated that he did not assess what Dyvex did after the fire to recoup its business or assess what Dyvex should not have done after the fire that cost it its business.

Agilex points out that in his report, "Rust documented a realistic proposed rebuilding construction schedule, that even factored in current economic conditions" and that "[a construction company] could have immediately been contacted to replace the exact building as originally fabricated." Rust also stated that Dyvex could have immediately ordered a new Chinese kneader machine that would have been delivered in weeks. Rust also opines that Dyvex could have rebuilt its building in a reasonable amount of time based on his estimate from his own experience of putting up dozens of buildings. Rust opines that Dyvex should have been able to resume its normal business operations no later than February 14, 2011, and he details how he believed this was possible.

The court finds that Rust has a sufficient business foundation and acumen for rendering his opinions that Dyvex could have rebuilt its business after the fire and for his opinions regarding Dyvex's business interruption since these opinions are relevant to Dyvex's mitigation of damages. Rust has the required knowledge to opine whether it made good business sense for Dyvex to rebuild its building even though Dyvex argues that he does not know

what exactly it did to try and keep its business. Dyvex's challenges to Rust's opinions are more appropriately addressed during his cross-examination. Thus, the court will allow Rust's opinions that Dyvex could have regained its customers and rebuilt its building.

Dyvex also argues that Rust should be precluded from criticizing three of its experts since they offered opinions in fields totally different from Rust's areas of expertise, including his criticism of Dyvex's expert chemist, Ronald Thaman, Dyvex's extrusion/kneader expert Chris Rauwendaal, who has a Ph.D. in the subject, and Dyvex's fire origin and cause expert. Dyvex states that Rust has no qualifications in these fields and he should not be permitted to testify regarding any opinions he has about Dyvex's experts. Rust will be allowed to render his opinions about Dyvex's experts only to the extent that his opinions are not based on any OSHA regulations or on any other safety standards and codes. Dyvex will be to able cross-examine Rust as to his opinions and alleged lack of expertise.

## IV. CONCLUSION

Accordingly, the court will **GRANT IN PART** and **DENY IN PART** Dyvex's motion to preclude Rust, (Doc. 94), as discussed above.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 22, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-979-07.wpd

18