# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DYVEX INDUSTRIES, INC.,** | : | |
| **Plaintiff,** | : | **Civil No. 12-CV-979** |
| v. | : | **(JUDGE MANNION)** |
| **AGILEX FLAVORS & FRAGRANCES, INC.,** *et al.*, | : | |
| **Defendants** | : | |

## M E M O R A N D U M

## I.  BACKGROUND

On February 28, 2018, the court issued a Memorandum and Order, which granted Dyvex's motion for partial summary judgment in its entirety. (Docs. 156 & 157). The court ordered that Agilex defendants ("Agilex") were precluded from raising any defenses to Dyvex's claims based on OSHA regulations and all of the other safety/industry standards stated in the court's memorandum, including building and fire codes, and based on the insurance contract, as well as any relationship, between Dyvex and Nationwide. The court found as follows:

> Dyvex owed no duty to Agilex to make its building more fire resistant and more compliant with OSHA, with state or local building codes, and with safety recommendations made by Nationwide. Agilex will be precluded from offering any evidence to show that Dyvex's compliance with those standards, codes and regulations would have prevented the fire at its building or reduced Dyvex's property damage, including Rust's opinions that if Dyvex had operated its business in compliance with OSHA regulations, Dyvex's loss would have been avoided or greatly reduced.

On March 14, 2018, Agilex filed a timely motion for reconsideration of the court's Memorandum and Order, and a brief in support.[1] (Docs. 158 & 159). Dyvex filed its brief in opposition on March 19, 2018. (Doc. 161). Agilex filed a reply brief on April 2, 2018. (Doc. 170).

On March 22, 2018, the court issued a Memorandum and Order, which granted in part and denied in part Dyvex's motion to preclude Agilex's expert Wendell D. Rust from testifying at trial, including rendering any opinions regarding the alleged duties and standards of care Dyvex owed to Agilex. (Docs. 162 & 163). The court stated as follows:

> Since the court has granted Dyvex's partial summary judgment motion and precluded Agilex from asserting any of its defenses to Dyvex's claims based on the stated alleged safety violations and based on any conduct of Dyvex in terms of its compliance with safety provisions and standards, it will also grant Dyvex's motion to preclude Rust from testifying regarding any and all of his opinions pertaining to Dyvex's non-compliance with OSHA and industry safety standards as well as building codes. Nor will Rust be permitted to testify regarding any aspect of Dyvex's relationship with Nationwide. Rust will also be precluded from rendering his opinions at trial that Dyvex violated the stated safety provisions, regulations and codes and, from rendering his opinions that Dyvex's violations lead to the fire and greatly increased the amount of fire damage in Dyvex's building.

> The court also noted that "Rust opines, in part, that if Dyvex had

---

[1]Since the full procedural history of this case as well as the facts were stated in the court's February 27, 2018 Memorandum, as well as its other decisions regarding the dispositive motions of the parties, they will not be repeated herein. Also, the court will not fully repeat its rationale and its findings discussed in its February 27 and March 22, 2018 decisions. Nor does the court repeat the full names of the parties.

2

operated its business in compliance with the OSHA fire standards, Dyvex's fire loss could have been avoided or reduced."

The court concluded that "Rust will be precluded from opining that 'dangerous work procedures and unsafe work practices at the Dyvex facility lead to this fire and contributed to the needless destruction of [its] facility', and that "Rust [will not] be permitted to opine that if Dyvex had the proper fire safety prevention standards in place as required by the stated provisions and codes, it would have been able to put out the fire and minimize any damages to its building."

On April 5, 2018, Agilex filed a timely motion for reconsideration of the court's Memorandum and Order to the extent that the court granted Dyvex's motion to preclude Rust from testifying. (Doc. 172). Agilex filed a brief in support of its motion. (Doc. 173). Dyvex filed its brief in opposition on April 6, 2018. (Doc. 174).

Based on the filings of the parties and the court's review of its February 28, 2018 Memorandum and its March 22, 2018 Memorandum, it will **DENY** both of Agilex's motions for reconsideration.

## II. STANDARD OF REVIEW

A motion for reconsideration may be used to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if previously discovered, might have affected the court's decision. *United*

*States el rel. Schumann v. Astrazeneca Pharmaceuticals, L.P.*, 769 F.3d 837, 848 (3d Cir. 2014) (citing *Max's Seafood Café v. Quineros*, 176 F.3d 669, 677 (3d Cir. 1999)); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A party seeking reconsideration must demonstrate at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). However, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus. Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Reconsideration is generally appropriate in instances where the court has "misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning, but of apprehension." *York Int'l Corp. v. Liberty Mut. Ins. Co.,* 140 F. Supp. 3d 357, 360–61 (3d Cir. 2015) (quoting *Rohrbach v. AT & T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995)). It may not be used as a means to reargue unsuccessful theories that were presented to the court in the context of the matter previously decided "or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." *Id*. at 361 (quoting

4

*Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)). The "motion will not be granted merely because a party is dissatisfied with the court's ruling, nor will a court consider repetitive arguments that were previously asserted and considered." *Frazier v. SCI Med. Dispensary Doctor + 2 Staff Members*, No. 1:07-194, 2009 WL 136724, at *2 (M.D. Pa. Jan. 16, 2009) (collecting cases).

## III. DISCUSSION

The remaining claims raised by Dyvex in its complaint, (Doc. 1), against Agilex are for negligence, breach of warrant, and strict liability.[2] As the court has previously stated, Dyvex basically claims that Agilex's PPG fragrance oil was defective and created an unreasonable risk of fire, and that the June 3, 2010 fire at its facility was caused by Agilex's PPG that was being processed at the time. Also, Dyvex alleges that the PPG was unsafe and unsuitable for use in its Buss-Kneader machine, and that Agilex failed to warn it of PPG's dangers, including its 93 degree flash point. The threshold question with respect to Dyvex's strict products liability claim and its negligence claim is whether the product, i.e., Agilex's PPG, is in a defective condition. Warnick v. NMC-Wollard, Inc., 512 F.Supp.2d 318, 323 (W.D.Pa. 2007). Further, the Court in Tincher v. Omega Flex, Inc., 104 A.3d 328, 335 (Pa. 2014), reiterated

---

[2]Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003).

5

that "a plaintiff pursuing ... a theory of strict liability in tort must prove that the product is in a 'defective condition.'"

In its reconsideration motions, the court finds that Agilex is largely repeating its arguments raised in its briefs in opposition to Dyvex's motion for partial summary judgment and Dyvex's motion to preclude Rust from testifying at trial. To the extent that court has previously considered Agilex's arguments, it will not rehash its discussion regarding these issues herein.

The court has again considered the arguments raised by the parties for and against the admission of industry standards evidence offered by Agilex regarding the alleged failure of Dyvex to comply with such standards in this strict products liability case. Agilex argues that Dyvex's alleged OSHA violations and violations of the previously stated industry and code standards are relevant to causation, to Dyvex's alleged reckless conduct, to Dyvex's alleged contributory negligence, to Dyvex's spoliation of evidence, and to Dyvex's duty to mitigate damages. Agilex also contends that Dyvex's conduct is relevant in light of Tincher, 104 A.3d at 401-02, as "to whether a claimed product defect creates an 'unreasonably dangerous' product, particularly under the risk/utility prong of its 'composite' test." Agilex states that Dyvex's conduct is relevant regarding the fifth risk/utility factor, which is, "The user's ability to avoid danger by the exercise of care in the use of the product." Tincher, 104 A.3d at 389-90.

The Pennsylvania Supreme Court in Tincher, id. at 335, "held that a

plaintiff may show a defective condition by showing either that '(1) the danger is unknowable and unacceptable to the average or ordinary consumer [the consumer expectations test], or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions [the risk-utility test].'" Renninger v. A & R Machine Shop,163 A.3d 988, 996-97 (Pa.Super. 2017). Further, "[t]hroughout its *Tincher* opinion, the Supreme Court noted that the risk-utility test is derived from negligence principles." Id at 997. The court in Wright v. Ryobi Technologies, Inc., 175 F.Supp.3d 439, 451(E.D.Pa. 2016), specified "[f]actors relevant to th[e] risk-utility analysis" as follows:

> (1) the product's usefulness and desirability, (2) its safety aspects, (3) the availability of a substitute product which would meet the same need and not be as unsafe, (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility, (5) the user's ability to avoid danger by exercising care when using the product, (6) the user's anticipated awareness of the dangers inherent in the product either because of general public knowledge of the obvious condition of the product, or because of the existence of suitable warnings and instructions, and (7) the feasibility of spreading the loss by setting the price of the product or carrying liability insurance. [Tincher] at 389-90.

> The court in Wright, id at 450, also explained:

> Although evidence of a user's negligence cannot be introduced at trial to excuse a defective product or to reduce recovery by comparing fault, a plaintiff's conduct in a strict products liability action may be relevant as it relates to causation. Madonna, 708 A.2d at 508. A plaintiff bringing a strict products liability claim must prove that the product was defective and that the defect was the proximate cause of his injury. Id. (citing Walton v. Avco Corp., 530 Pa. 568, 610 A.2d 454, 458 (1992)). But a user's negligence

7

is not relevant if the product defect contributed in any way to the harm. Id. at 509. Assumption of risk, product misuse, and highly reckless conduct are all affirmative defenses for which the defendant asserting them bears the burden of proof. Reott v. Asia Trend, Inc., 55 A.3d at 1092. Highly reckless conduct is that which occurs when the plaintiff would have been injured despite the curing of any alleged defect, or it is so extraordinary and unforeseeable as to constitute a superseding cause. Id. at 1101 (citing Madonna, 708 A.2d at 509). Where reasonable minds may differ, questions of causation and proximate cause are for a jury to decide. Summers, 997 A.2d at 1164.

Thus, "evidence of a plaintiff's ordinary negligence may not be admitted in a strict products liability action ... unless it is shown that the accident was **solely** the result of the user's conduct and not related in any [way] with the alleged defect in the product." Gaudio v. Ford Motor Co. 976 A.2d 524, 541 (Pa.Super. 2009) (citation omitted) (emphasis in original). As such, "a user's negligence is not relevant if the product defect contributed in any way to the harm." Id. (quoting Madonna, 708 A.2d at 509).

Further, "while evidence of a plaintiff's contributory negligence is generally inadmissible [in strict products liability actions], there are certain limited exceptions in which the plaintiff's conduct in a particular case may be relevant." Id. at 540 (citations omitted). "Evidence of a plaintiff's voluntary assumption of the risk, misuse of a product, or highly reckless conduct is admissible to the extent that it relates to the issue of causation." Id. at 540-41.

Here, Agilex argues that evidence of Dyvex's conduct and whether it complied with OSHA and industry safety standards is relevant to the issue of causation, to Dyvex's alleged reckless conduct in failing to protect against

8

fires, to mitigation of damages by Dyvex, and to the risk-utility analysis. In particular, Agilex contends that Dyvex's alleged reckless conduct in failing to protect against a known risk in the nature of fires is admissible for purposes of its assumption of risk defense and that Dyvex's conduct is relevant to the fifth factor of the risk-utility analysis, which requires an assessment of "[t]he user's ability to avoid the danger by the exercise of care in the use of the product." Tincher, 104 A.3d at 390. With respect to mitigation, Agilex points out that it produced evidence showing that Dyvex had prior fires at its facility that were not related to its processing of Agilex's fragrance oils and that Dyvex had a "non-delegable duty to provide a safe work environment." Agilex contends that Dyvex had a duty to mitigate damages and prevent "avoidable consequences", i.e., "a fire was a known consequence of operating [Dyvex's] business in the manner in which it was being run and, therefore, this fire should have and could have been avoided regardless of its cause." Agilex also states that this evidence regarding Dyvex's conduct is admissible with respect to its mitigation of damages affirmative defense, at least regarding Dyvex's negligence claim.

  The court does not find that *Tincher* had an impact on the fifth factor of the risk-utility analysis, since "the risk of harm still rests with the manufacturer or seller of the product and the focus remains on the product." Rapchak v. Haldex Brake Products Corp., 2016 WL 3752908, *6 (W.D.Pa. July 14, 2016) (citing Tincher, 104 A.3d at 419). *See also* Gaudio, 976 A.2d at 542 ("the

9

focus in all products liability cases must be on the product and not on the conduct of the parties."). As the court in Rapchak, id., stated, "[w]hile the risk-utility analysis may invite inquiry into the conduct and choices of the manufacturer vis-à -vis the product *before* the product is brought to market, the 'post-marketing' conduct of a particular user is irrelevant for the purposes of determining whether the product itself is defective." (emphasis original). Thus, "the proper focus in applying the fifth Wade factor [of the risk-utility analysis] is an objective inquiry into whether the class of ordinary purchasers of the product could avoid injury through the exercise of care **in use of the product**, not whether this particular [user] could have avoided this particular injury." Id. (citing Surace, 111 F.3d at 1051) (emphasis added). The court in Rapchak, id. at *7, quoted the Third Circuit in Surace, 111 F.3d at 1051, and stated, "the user's ability to avoid injury by the exercise of care in the use of the product appears to be a design factor that may justify a more or less exacting design depending on the facts, but it is, in any case, not a vehicle for injecting a plaintiff's (alleged) failure to exercise due care into the case." The court in Rapchak, id., then held that "Defendant cannot offer evidence of [plaintiff's] alleged own lack of due care to negate Plaintiff's attempt to establish that the [product] was defective, as such evidence is irrelevant to determining whether the potential risks of putting the product into the market outweighed the potential utility of the product as designed."

As such, even if Dyvex's alleged conduct which Agilex seeks to

introduce amounts to negligence, "it is not relevant to performing the risk-utility analysis." Id. Nor is Dyvex's alleged conduct in failing to protect against fires relevant to causation, "as it does not amount to misuse or highly reckless conduct." Id. (citing Reott v. Asia Trend, Inc., 55 A.3d at 1088, 1101 (2012) ("highly reckless conduct [with respect to the plaintiff's use of a product] is that which occurs when the plaintiff would have been injured despite the curing of any alleged defect, or is so extraordinary and unforeseeable as to constitute a superseding cause")). In any event, simply because Dyvex allegedly had fires in the past at its facility and Agilex has evidence that Dyvex allegedly failed to take fire safety precautions, this evidence does not show that either Dyvex or Manchio failed to exercise care in using of Agilex's PPG on the night of the fire or that they engaged in highly reckless conduct in processing the PPG. "[T]the manufacturer is responsible for making the product safe for all foreseeable uses." Parks v. Allied Signal, Inc., 113 F.3d 1327, 1332 (3d Cir. 1997). "[I]f both a manufacturer's defect and a plaintiff's conduct are found to be proximate causes, the plaintiff will recover unless the defendant meets the burden of proving that plaintiff's conduct [regarding the use of the product] was so unforeseeable as to constitute a superseding cause." Id. In this case, Agilex's proffered evidence does not relate to Dyvex's conduct in using the PPG and whether this conduct was unforeseeable to Agilex, rather it relates to Dyvex's pre-fire conduct regarding the compliance of its facility with safety standards and regulations.

11

Dyvex's conduct, to the extent that it would be relevant with respect to its strict liability claim, relates to its use of Agilex's PPG and not to its operation of its facility.

Agilex also contends that it should be allowed to offer evidence regarding Dyvex's failure to protect against fires and that this evidence is admissible with respect to its defense of assumption of the risk. No doubt that assumption of the risk "is a valid defense in a products liability case inasmuch as it goes to whether the alleged defect actually caused the alleged harm." Id. at *8. However, "'[t]o establish voluntary assumption of the risk, [ ], the defendant must show that the buyer knew of a defect and yet voluntarily and unreasonably proceeded to use the product.'" Id. (quoting Reott, 55 A.3d at 1096). Further, in a strict liability action, "[e]vidence of contributory negligence, standing alone, is insufficient to prove a voluntary assumption of the risk by [plainitff]." Charlton v. Toyota Indus. Equipment, 714 A.2d 1043, 1047 (Pa.Super. 1998) (citations omitted). Dyvex essentially claims that Agilex's PPG fragrance oil was defective and created an unreasonable risk of fire, and that the June 3, 2010 fire at its facility was caused by Agilex's PPG that was being processed at the time. Dyvex also alleges that the PPG was unsafe and unsuitable for use in its Buss-Kneader machine, and that Agilex failed to warn it of PPG's dangers, including its 93 degree flash point. The court has not seen any evidence that Dyvex knew of the alleged defect in Agilex's PPG, i.e., it had a low flash point, and that Dyvex assumed the risk

and still decided to process the PPG. As such, the court will not give the jury an instruction on the assumption of the risk defense. *See id.*

Additionally, Agilex contends that it should be allowed to introduce evidence of Agilex's conduct since Dyvex had a duty to mitigate damages and, that it should be allowed to show some of the damages from the fire could have been avoided by Dyvex with reasonable effort and without undue risk and expense by complying with industry standards and building code safety requirements. Agilex also states that it should be allowed to introduce evidence that Dyvex acted recklessly in the face of a known risk based on the previous fires in the Dyvex facility, and, that it is reasonable for any business "to rely upon a legitimate business entity such as Dyvex to act reasonably and lawfully." Dyvex responds by arguing that its pre-fire conduct and whether it complied with industry safety standards are not relevant regarding its duty to mitigate damages since this duty relates to its post-loss conduct.

Moreover, Agilex contends that "[i]f the court determines that OSHA still is not admissible in strict liability cases on the question of defect, this evidence would still be relevant and admissible with respect to the question of Dyvex's failure to have proper fire prevention measure and fire suppression equipment that would have prevented or limited the fire and therefore mitigate the damages." "A defendant alleging that a plaintiff failed to mitigate its damages must show 1) what reasonable action the plaintiff ought to have taken; 2) that those actions would have reduced the damages; and 3) the

13

amount by which the damages would have been reduced." RHJ Medical Center, Inc. v. City of Dubois, 2012 WL 12859837, *24 (W.D.Pa. Aug. 17, 2012) (citing Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 258-59 (3d Cir. 2008)). Further, "[m]itigation is an affirmative defense, for which the breaching party bears the burden of proof." Prusky, 532 F.3d at 258 (citations omitted). "Damages that could have been 'avoided with reasonable effort without undue risk, expense, burden, or humiliation will be considered ... as not being chargeable against the defendant.'" Id. at 259 (citation omitted). "Reasonableness 'is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented.'" Id. (citation omitted). In Kern v. Nissan Indus. Equipment Co., 801 F.Supp. 1438, 1444 (M.D.Pa. 1992), the court considered the admission of evidence of plaintiff's conduct in a strict liability action for the purpose of mitigating damages and indicated that "the concept of avoidable consequences—post-accident negligence that aggravates an injury—is analogous to that of contributory negligence, and, like the latter, should be excluded in strict liability actions." (citations omitted). The court in Kern, id., then stated that "[e]ven if the evidence is only being used to mitigate damages, *Dillinger* [959 F.2d at 438-39] determined that the evidence was inadmissible because strict liability is, with a few, clearly delineated exceptions, incompatible with negligence concepts. The court finds that these inquiries regarding Dyvex's duty to mitigate its damages focus on whether

14

Dyvex took reasonable efforts to mitigate damages after the fire, i.e., "at the time the problem was presented", and not on Dyvex's pre-fire conduct regarding whether its facility complied with safety standards.

Finally, insofar as Agilex states that based on the court's December 4, 2015 Memorandum regarding the dismissal of the claims against Manchio, (Doc. 78), "the contributory negligence of Dyvex and Manchio as the insureds could be asserted by Agilex as a defense against Nationwide as the insurer, including their failure to comply with and abide by laws, rules, regulations, ordinances and industry standards." However, only the conduct of Dyvex and Manchio which the court finds admissible at trial can be used by Agilex as a defense against Nationwide. Agilex cannot use the evidence against Nationwide which the court has precluded in its February 28, 2018 Memorandum and its March 22, 2018 Memorandum.

Accordingly, the court will deny both of Agilex's motions for reconsideration.

Finally, Agilex's request to certify these non-final orders for interlocutory appeal will be denied. As the *Tincher* court explained, "[t]he common law regarding these related considerations should develop within the proper factual contexts against the background of targeted advocacy." Id. At 432. That is exactly the process that is occurring here.

## IV. CONCLUSION

In light of the above, **IT IS HEREBY ORDERED THAT** Agilex's motion for reconsideration of the court's February 28, 2018 Memorandum and Order, (Doc. 158), is **DENIED**. Agilex's motion for reconsideration of the court's March 22, 2018 Memorandum and Order, (Doc. 172), is **DENIED**. The court's February 28, 2018 and March 22, 2018 decisions shall not be altered. Agilex's request that the court certify this case for an interlocutory appeal pursuant to §1292(b) is **DENIED.** An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**Date: September 18 , 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-979-12.wpd